*In re* HENRY.

1. CONTEMPT—MUNICIPAL COURT OF FLINT—JUSTICES OF THE PEACE.
   The power of the municipal court for the city of Flint to punish for contempt is only such power as is granted to it and like courts by provisions of the judicature act relative to justices of the peace (CL 1948, §§ 679.1–679.7).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur, Contempt §§ 44, 45.
   What courts or officers have power to punish for contempt. 73 ALR 1185.
[2] 12 Am Jur, Contempt § 61.
[3, 7] 12 Am Jur, Contempt § 61.
   Necessity that hearing be allowed before imposition of punishment for contempt. 57 ALR 545.
[4] 12 Am Jur, Contempt §§ 66, 68, 69.
[5] 12 Am Jur, Contempt § 73.
[6] 12 Am Jur, Contempt §§ 11–13.
[8] 12 Am Jur, Contempt §§ 48, 66.
[9] 20 Am Jur, Evidence § 83.
[10] 12 Am Jur, Contempt § 79.
   Allowance of attorney's fees in contempt proceedings. 55 ALR2d 979.

2. SAME—PUNISHMENT AFTER TERMINATION OF PROCEEDINGS.

No specific limitation is imposed upon a justice of the peace or municipal judge to punish for contempt by reason of the termination of the proceedings in which the act was committed (CL 1948, § 679.1).

3. SAME—SUMMARY PUNISHMENT.

A municipal judge may, but is not required to, summarily punish an attorney appearing before him, if he deems the acts contemptuous conduct at time (CL 1948, §§ 679.1–679.7).

4. SAME—DESCRIPTION OF CONDUCT—ARREST WARRANT.

Arrest warrant, as issued by municipal judge, and recitations of conclusions of the judge, *held*, to have sufficiently informed attorney, therein charged with contempt, of the particular conduct which the court considered to have been contemptuous, notwithstanding an erroneous description of the attorney's statement relative to the court's conduct that was not entirely supported by the record (CL 1948, §§ 679.1–679.7).

5. SAME—PURGING—QUALIFIED JUDGE.

Whether or not attorney purged himself of the alleged contempt when brought before the municipal judge who charged him with contempt committed in the judge's presence, when brought before such judge for sentence is not determined, where matter is remanded for hearing and disposition by another municipal judge who is not disqualified to act (CL 1948, §§ 679.1–679.7).

6. ATTORNEY AND CLIENT—RULING BY TRIAL COURT.

It is the right of an attorney for every litigant to press his claim, even if it appears farfetched and untenable, and to obtain the court's ruling thereon, and if the ruling is adverse, it is not counsel's right to resist it or to insult the judge, but only respectfully to preserve his point for appeal; the full enjoyment of such right, with due allowance for the heat of controversy, to be protected by appellate courts when infringed by trial courts.

7. CONTEMPT—SUMMARY PUNISHMENT FOR CRIMINAL CONTEMPT.

A trial judge has power to punish for criminal contempt of court summarily (CL 1948, §§ 679.1–679.7).

8. SAME—DISPOSITION BY ANOTHER JUDGE.

Contempt proceedings having their origin in colloquy between the trial judge in the municipal court and defense counsel that contained allegations by both, which were personal in nature, are directed to be heard by another judge of multijudge municipal court, where there appears to be no pressing demand that

the proceedings be disposed of immediately (CL 1948, §§ 679.1–679.7).

9. EVIDENCE—JUDICIAL NOTICE—MUNICIPAL COURT.
   The Supreme Court takes judicial notice of the fact that the Flint municipal court is a multijudge court.

10. COSTS—CONTEMPT—REMAND.
   No costs are allowed on appeal by petitioner for habeas corpus where contempt proceedings which resulted in order for his commitment are remanded for disposition by another judge in the same municipal court, since he has not prevailed in the entirety (CL 1948, §§ 679.1–679.7).

Appeal from Genesee; Roth (Stephen J.), J. Submitted January 9, 1963. (Calendar No. 18, Docket No. 49,622.) Decided February 7, 1963.

Habeas corpus and certiorari by Milton R. Henry, an attorney, challenging his confinement by a Flint municipal judge on charge of criminal contempt for conduct during criminal trial. Petition dismissed. Plaintiff appeals. Judgment of contempt set aside and matter remanded for hearing before a different municipal judge.

*Milton R. Henry, in propria persona.*

*Walter P. Kuta,* Prosecuting Attorney, and *Edward P. Joseph,* Assistant Prosecuting Attorney, for the people.

KAVANAGH, J. Petitioner is here on leave granted from an order of the Genesee county circuit court dismissing petitioner's writs of habeas corpus and certiorari.

Petitioner is a member of the State Bar of Michigan. On June 28, 1961, he was representing 39 of 41 defendants charged with knowingly loitering in a place where gambling was suffered, permitted,

encouraged, or allowed, contrary to the disorderly conduct ordinance of the city of Flint. The trial was taking place before Flint Municipal Judge Donald R. Freeman.

After the selection of the jury, the people commenced their offer of proofs. The first witness was a member of the vice squad, one Dave Harris. During his testimony on direct examination the following took place:

"*Q*. Was there anything else near or about this table that you have described, that you discovered there, Lieutenant Harris?

"*A*. Yes.

"*Q*. What was that?

"*A*. It was the cloth known as a 'dice lay-out cloth' that was laying underneath the table.

"*Q*. Did you seize that cloth?

"*A*. Yes.

"*Q*. And what did you do with that cloth?

"*A*. It's here in the courtroom. It's in this plastic bag.

"*Q*. I will ask you to look at this —

"*Mr. Lovinger* (Assistant City Attorney for the city of Flint): I don't know how to mark this, Your Honor, No. 2? People's proposed No. 2?

"*The Court:* Yes.

"*Q*. (By Mr. Lovinger, continuing): Look at this and tell me, if you can, what that is.

"*Mr. Henry* (the petitioner): I objected to this, any of this until we have a right to cross-examine. I again insist —

"*The Court:* He has the right to identify the object.

"*Mr. Henry:* Identifying it, and showing it around and displaying it before the jury is 2 different things. I have —

"*The Court:* I have made my ruling, Mr. Henry.

"*Q*. (By Mr. Lovinger, continuing): Can you identify what that is? Or tell me where you found that?

"*A*. Underneath the table, the dice table.

"*Q.* Is that the cloth of which you spoke?

"*A.* Yes, it is.

"*Q.* Is there any way you can identify that?

"*A.* It looked like the cloth, and it was the one we were holding in evidence that I turned in.

"*Q.* Did you turn that in to the property department?

"*A.* I turned in one that looked like this one.

"*Q.* You didn't mark that in any way. Did you get a receipt for it?

"*A.* I got a receipt for it, yes, sir.

"*Q.* Do you have a — that receipt?

"*A.* I do. I have a copy of that receipt. A ·copy, my copy of it.

"*Q.* And do you have that?

"*A.* Yes, I do.

"*Q.* That's item No. 5 on your property receipt?

"*A.* Yes, it is.

"*Q.* Signed by you, is it, that receipt?

"*A.* Yes, it is.

"*Q.* And where did you find this cloth?

"*A.* Underneath the dice table, the pool table.

"*Q.* Under this table that you have described?·

"*A.* Yes.

"*Mr. Lovinger:* At this time, Your Honor, I would offer it in evidence.

"*Mr. Henry:* I object to this display, Your Honor, and I don't think I need to say any more about my objection.

"*The Court:* Mr. Joseph, do you have any objection to its being allowed?

"*Mr. Joseph* (the attorney representing 2 of the defendants): Of course, the witness has testified he turned in something that looked like that. Unless he can testify that it is the article that he took out of the place, and that is the article that is introduced in court, I would say it is improper and may not be admitted.

"*The Court:* I think your objection is a valid one. I think that is true.

"*Mr. Henry:* You mean to tell me in this court you are going to consider it without me having a right to cross-examine this man as to the preliminaries, which I have requested and you have held in abeyance, and now you would even consider its display at this point? Is this the ruling of this court?

"*The Court:* Don't be so overwhelmed.

"*Mr. Henry:* I am overwhelmed by just the thought.

"*Mr. Lovinger:* If I understood the ruling, I was overruled.

"*Mr. Henry:* You were overruled on another —

"*The Court:* I am afraid Mr. Henry has lost the continuity —

"*Mr. Henry:* I am sitting —

"*The Court:* Why don't you sit longer, sir, and think longer.

"Mr. Joseph —

"*Mr. Henry:* I asked this not be displayed until I have a right to cross-examine.

"*The Court:* Mr. Henry, please sit down. I find your conduct quite amusing, and —

"*Mr. Henry:* There isn't anything amusing about this. I asked this not be displayed until — admitted or displayed until I have a right to cross-examine.

"*The Court:* Mr. Henry, please sit down.

"*Mr. Henry:* Your Honor —

"*The Court:* Do you understand the ruling of this court? You will sit down —

"*Mr. Henry:* I don't understand the ruling of the court. I am asking was this not — the ruling this not be displayed until —

"*The Court:* If you would do a little less shouting and listen —

"*Mr. Henry:* I talk loud because I can't hear too well.

"*The Court:* Well, that is —

"*Mr. Henry:* I believe I asked the court rule this should not be displayed.

"*The Court:* I will not argue with you, Mr. Henry, you will sit down, sir. Will you please sit down?

"*Mr. Henry:* I would like —

"*Mr. Lovinger:* I never got to hear the ruling because Mr. Henry jumped up —

"*The Court:* It is somewhat difficult, in the storm that is raised, to have some sobriety to the affair.

"The objection has been made by Mr. Joseph that the witness has indicated that this looks like the cloth, but he is not definitely able to determine that it is. I think that the objection made by Mr. Joseph is proper and that there should be further identification of the article.

"As to Mr. Henry's comments, they are not worthy of any comment.

"*Q.* (By Mr. Lovinger, continuing): All right. Are you able to identify this as the —

"*Mr. Joseph:* Just a moment. The witness answered —

"*Mr. Henry:* Just another moment. I will move for mistrial —

"*The Court:* Mr. Joseph is —

"*Mr. Henry:* I am going to move for a mistrial. I am not going to be abused —

"*The Court:* You are not —

"*Mr. Henry:* I have the cases precisely on point, and comments been made by the court, as you have made them —

"*The Court:* Just a moment.

"Mr. Jarrett, will you please have the jury removed from the courtroom, there is something I'd like to take up with counsel.

"I am sorry you people have been inconvenienced this way. Will you please follow the officer.

(Whereupon the jury was excused at 1:43 p. m.)

"Now, Mr. Henry, one thing I will say to you, sir, before you open your mouth. I have indicated to you that this trial was going to be handled in a businesslike, methodical and proper manner. I don't intend to have you change my plans. You are here, sir, to conduct yourself like a gentleman. If you cannot, your attendance is not desired or wished for.

"*Mr. Henry:* Your Honor —

*"The Court:* You will wait until I finish speaking, do you understand that, Henry? You are going to comply with standards of conduct in this courtroom because it's a fair and it's a proper standard of conduct.

"When I gave you the right, although I originally had some reservations about this, to have a reporter in this room, I indicated specifically to you that your reputation had preceded you and that I would not allow you to make comments for the purpose of cluttering up a record with things that had nothing to do with this case whatsoever. If you feel that you can handle this case in this way, fine. If you cannot, I will have the reporter removed from the courtroom.

·"In the second instance —

*"Mr. Henry:* I have been —

.*"The Court:* You will wait until I am finished.

*"Mr. Henry:* I am permitted —

*"The Court:* If your conduct continues the way that it is, sir, I will find you in contempt of court.

*"Mr. Henry:* That is your privilege.

*"The Court:* I will handle this in — this matter in a proper and methodical manner. You have my assurance of that, sir.

*"Mr. Henry:* Your Honor, I represent 42 people in this court. I have asked you, with reference to this thing, not to have it paraded in front of the jury. I asked, as a lawyer has a right to ask, proper preliminary examination of this man with reference to entrance into this building. There is no right more fundamental. This is no joking matter, Your Honor, you sit in a position —

*"The Court:* Your comments —

*"Mr. Henry:* I am talking now. You have given me permission to talk and I am the one talking —

*"The Court:* I have not —

"Deane, I will have you stop the transcript at this point. There will be no more taking —"

After the dismissal of the reporter, the court adjourned the trial until the next day and advised petitioner's clients they would have to get another attorney to represent them. No pronouncement of contempt was made. The following day the trial was completed. The jury returned its verdict of guilty against all the defendants, and the municipal judge sentenced the defendants, thus terminating the proceedings.

On June 30, 1961, petitioner was arrested upon a process issued by the municipal judge and described as "arrest warrant." The warrant directed that petitioner be brought before Judge Donald R. Freeman "to show cause" why he should not answer for contempt. This process was not supported by any petition, affidavit or independent order, record or judgment convicting the petitioner of contempt.

In the afternoon of June 30, 1961, petitioner was brought before Judge Freeman. At the hearing petitioner was represented by his attorney, who asked the court whether any order or record of conviction existed. The attorney was told that the only process in the case was the arrest warrant issued June 29, 1961, and that the court had brought the petitioner before him to permit petitioner to show cause why he should not be held in contempt. Motions were made to dismiss the arrest warrant for lack of jurisdiction and to discharge petitioner for the same reason. Both motions were denied.

Counsel for petitioner then moved for a more specific statement of the charge, and the court ruled that the arrest warrant itself contained a sufficient statement. Motion for continuance of hearing to permit time to prepare a defense was made, and denied by the court. Motion was made to transfer the cause to another judge, and denied.

Petitioner was then sworn and examined. He testified as follows:

"*Q.* Mr. Henry, did you, during the course of the trial of the case of the people of the city of Flint vs. some 42 odd people where this incident arose, did you intend any disrespect by any remarks you might have made?

"*A.* No, I did not. I have had no intent, other than to represent my clients and to do so adequately. If there was an impression on the part of the court any contemptuous manner was indicated I am sorry for that. But there was no intent on my part to be disrespectful to the court.

"I might indicate on that —

"*Q.* Mr. Henry, did you intend anything more than to represent your clients to the best of your ability?

"*A.* That was my intent. And, specifically, the objection being made to the parading before a jury of 6 people a dice cloth which had not been offered into evidence and which the court indicated the objection was so silly as to hardly be worthy of comment, that this was the thing which prompted every remark with reference to the admission of the exhibit. There never was any intent to be contemptuous or disrespectful.

"I have practiced 10 years. I have never been convicted — I have had a lot of newspaper articles, but I have never been contemptuous of the court. I can't control the tone of my voice; necessarily, that may seem to be contemptuous. There is no intent to — my interest at all times is to represent my clients and to do so fully.

"I don't think the objection I posed was an objection that had been ruled upon in the court. I believe in the transcript the court indicated — the comment was as to 'Too silly to be worthy of comment'.

"There was no intent to be flagrantly disrespectful, impudent or otherwise to this court. I was very much surprised to be ejected from the trial of my proceedings under the circumstances that I — the implication being —

"*Q.* You were ejected from the courtroom?

"*A.* I was put out, yes."

The court ruled there had not been any purging of contempt; that contempt had been committed in the presence of the court; and, therefore, it was the decision of the court that said petitioner be confined to the county jail of Genesee county for a period of 5 days. The following day, writs of habeas corpus and certiorari were issued by the circuit court and an order was made releasing petitioner from further detention and confinement upon return of the writs of habeas corpus and certiorari. A hearing was held in the circuit court on September 7, 1961.

The circuit judge in a written opinion in which he reviewed all the objections made by petitioner concluded that it was impossible for him to tell from the cold printed record whether or not a contempt had been committed; that he felt it the part of wisdom and propriety to leave this power of finding contemptuous conduct in the presence of the court to the individual jurist who observed the actions, tone of voice and inflections that might perhaps indicate contemptuous conduct on the part of petitioner, and which the record could not disclose. He concluded his opinion by saying:

"My feeling is that the proper tribunal for a question of this kind on this record is the Supreme Court, not this court."

The circuit judge declined to act further and left the conviction intact, but admitted petitioner to bond during appeal to the Supreme Court.

On appeal to this Court, petitioner raises the following questions:

1. Has a municipal judge, without first finding an attorney to be in contempt by appropriate written record of conviction made during a pending proceeding, any authority to issue an arrest warrant for an attorney, for the purpose of bringing him to

answer for an alleged direct contempt committed during the trial of a criminal cause then terminated?

2. Is a justice's record of conviction for summary contempt substantively defective, where it sets forth conclusions of the justice alleging the commission of a contempt, but does not embrace a recitation of the facts and circumstances of the offense or affirmatively contain sufficient facts to show his jurisdiction without the application of presumption or intendment in support of his judgment — or record?

3. Does the record of conviction of the justice in the instant case sufficiently set forth the "particular circumstances" of the contempt alleged, or is it insufficient, as a matter of law, by reason of its recitation of conclusions of the justice and other deficiencies?

4. On the return of its writs of habeas corpus and certiorari, should the circuit court have received into evidence the transcripts of proceedings before the justice and determined whether, as a matter of law, jurisdiction of the justice existed to invoke the contempt power?

5. Should the circuit court below have, as a matter of law, passed upon whether there had been a purging of any contempt where such language as was used by the attorney was not of a contemptuous nature *per se,* or profane, and the attorney disavowed any disrespectful intent, under oath?

It is conceded that the municipal court for the city of Flint had only such power to punish for contempt as is granted to it and like courts by chapter 79 of the judicature act (CL 1948, §§ 679.1–679.7 [Stat Ann §§ 27.3522–27.3528]). It is the contention of petitioner that under Michigan law the powers of the justice of the peace to punish for contempt are limited to such acts as are committed in his immediate view and presence during the sitting of the court. In support of this, petitioner cites *In re*

*Wood*, 82 Mich 75, and *In re Collins*, 329 Mich 192. Neither of these cases supports petitioner's position. In each case the only ruling of the court was that the acts allegedly constituting contemptuous conduct were not committed in the "immediate view and presence" of the court and, therefore, not punishable summarily.

No specific limitation is imposed upon a justice or municipal judge to punish for contempt by reason of the termination of the proceedings in which the act was committed. In this connection attention is called to CL 1948, § 679.1 (Stat Ann § 27.3522), which reads:

"In the following cases a justice of the peace may punish, as for criminal contempt, persons guilty of the following acts:

"1. Disorderly, contemptuous or insolent behavior towards such justice, while engaged in the trial of a cause, or in the rendering of any judgment, or in any judicial proceeding, which shall tend to interrupt such proceedings, or to impair the respect due to his authority;

"2. Any breach of the peace, noise, or other disturbance, tending to interrupt any judicial proceedings of a justice;

"3. Resistance wilfully offered by any person in the presence of a justice, to the execution of any lawful order or process made or issued by him."

It is to be noted that the first sentence provides a justice of the peace *may* punish for contempt.

CL 1948, § 679.3 (Stat Ann § 27.3524), provides:

"No person shall be punished for a contempt before a justice until an opportunity shall have been given him to be heard in his defense; and for that purpose, a justice may issue a warrant to bring the offender before him; or, if the contempt was committed in the presence of the justice, he may cause the offender forthwith to be arrested therefor, without issuing any process in the first instance."

Attention is called to the fact that this section also indicates a justice *may* issue a warrant to bring the offender before him, or if the contempt was committed in the presence of the justice he *may* cause the offender forthwith to be arrested therefor without issuing any process in the first instance.

We find nothing that would have prohibited the municipal judge from summarily punishing petitioner if he deemed the acts contemptuous conduct at the time he dismissed the jury. However, this he was not required to do.

In answer to the second question raised by petitioner, we have reviewed the warrant issued by the municipal judge and conclude that the commitment warrant did sufficiently inform petitioner of the charge against him and the particular conduct which the court considered to have been contemptuous, insolent, and disorderly so as to interrupt the proceedings on the trial. It is true the court erroneously described petitioner's statement regarding "the court's conduct as being tyrannical." The record does not disclose the use of this term. However, we do not believe that his erroneous choice of words in this instance was sufficient to invalidate the arrest warrant.

We reach the same conclusion as to the third question raised on appeal. Petitioner has not been deprived of a recitation of the facts sufficient to inform him of the actions the court considered to be contemptuous.

Since the contempt, if committed at all, was committed in the presence of the court, the statute authorizes the offender to be forthwith arrested without issuing any process in the first instance. The court was concerned that petitioner have due process and gave him an opportunity to purge himself when brought before the judge on the arrest warrant prior to sentence.

In view of our ultimate disposition of this case, we are not passing upon whether the petitioner did purge himself of the alleged contempt by his testimony during the hearing.

In the case of *United States* v. *Bradt,* 294 F2d 879, the United States court of appeals, sixth circuit, in a similar situation discussed at length the Federal rules of criminal procedure in regard to punishment for contempt involving acts committed in the actual presence of the court and criminal contempt involving acts not committed in the presence of the court. The court noted the Federal rules provide those acts not committed in the presence of the court should be prosecuted on notice and by a hearing which allows a reasonable time for the preparation of the defense. The court went on to say, if the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with defendant's consent.

In *Bradt* (p 884) the court discussed the case of *Cooke* v. *United States,* 267 US 517 (45 S Ct 390, 69 L ed 767), calling attention to the fact that in *Cooke* the court said (p 539) the exercise of the power of contempt is a delicate one and care is needed to avoid oppressive conclusions, and that "this rule of caution is more mandatory where the contempt charged has in it the element of personal criticism or attack upon the judge." The supreme court then pointed out that such cases present difficult questions for the judge, stating "All we can say upon the whole matter is that where conditions do not make it impracticable, or where the delay may not injure public or private right, a judge called upon to act in a case of contempt by personal attack upon him, may, without flinching from his duty, properly ask that one of his fellow judges take his place."

In the *Bradt Case,* the court also (p 884) discussed *Sacher* v. *United States,* 343 US 1 (72 S Ct 451, 96 L ed 717), where the United States supreme court upheld the right of a judge to punish attorneys for criminal contempt summarily where the conduct constituting the contempt was committed in the actual presence of the court. The supreme court there held that while it is the right of counsel for every litigant to press his claim, even if it appears farfetched and untenable, to obtain the court's considered ruling and that full enjoyment of that right, with due allowance for the heat of controversy, will be protected by appellate courts when infringed by trial courts; yet, if the ruling is adverse, it is not counsel's right to resist it or to insult the judge, but only respectfully to preserve his point for appeal.

The court of appeals then proceeded to discuss the case of *Offutt* v. *United States,* 348 US 11 (75 S Ct 11, 99 L ed 11), where the United States supreme court again upheld the right of the court to take summary action against trial counsel in criminal contempt proceedings. It ruled that because of the personal nature of the controversy between the judge and the offending attorney, the application of the rule pronounced in *Cooke* v. *United States, supra,* was called for and the contempt proceedings should have been heard and decided by a different judge from the one who instituted the proceedings. The court pointed out it was a situation where the contempt was in a sense personal to the judge.

In the case before us we find no pressing demand that the contempt proceedings be held and disposed of immediately. We think the controversy between the judge and the petitioner had its roots in the colloquy between the court and petitioner on June 28, 1961, and involved allegations both by the judge and the petitioner which were personal in nature, which makes it advisable that the contempt pro-

ceedings be heard by another judge if one is available. The court takes judicial knowledge of the fact the Flint municipal court is a multijudge court.

In making this ruling we are in no way passing on the merits of the issues presented or involved, except as to the questions of law previously discussed. Our present ruling is directed to the proper method of a hearing and determination of the charges against the petitioner.

The judgment of contempt is set aside and the case remanded to the circuit court with instructions to remand to the municipal court for a hearing and disposition by another judge, at which time the opportunity will be given the petitioner to purge himself of the alleged contempt, in accordance with the statute.

Petitioner not having prevailed in the entirety, no costs shall be allowed.

CARR, C. J., and DETHMERS, KELLY, BLACK, SOURIS, and O'HARA, JJ., concurred.

OTIS M. SMITH, J., did not sit.