IN THE MATTER OF MEIZLISH

1. Courts—Recorder's Court—Referees—Trial—Recommendations—Statutes.

An appearance before a referee of the Detroit Recorder's Court, Traffic and Ordinance Division, is not a trial; the referee only makes recommendations, not findings of guilt (MCLA 725.19; MSA 27.3959).

2. Contempt—Attorneys—Obstructions—Judicial Duty.

The arguments of a lawyer in presenting his client's case strenuously and persistently cannot amount to a contempt of court where the lawyer does not in some way create an obstruction which blocks the judge in the performance of his judicial duty.

3. Contempt—Lawyers—Conduct.

A lawyer's conduct may not be the subject of contempt charges unless it manifestly transgresses that which is permissible.

4. Attorney and Client—Lawyers—Conduct Before Judge—Contempt.

The protection of his client's rights may require that a lawyer resist the wishes of a judge on some matters, and though his resistance should never lead him to act disrespectfully, it may require him to appear unyielding and uncooperative at times; in so doing, he does not contradict his duty to the administration of justice but fulfills his function within the adversary system.

5. Contempt—Summary Convictions—Lawyers—Obstructions—Judicial Duty.

A summary conviction of a lawyer for contempt should be reversed where the conviction was based upon the lawyer's persistent efforts to present his client's position and not upon

---

References for Points in Headnotes

[1] 20 Am Jur 2d, Courts § 4.

66 Am Jur 2d, References § 22.

[2–9] 17 Am Jur 2d, Contempt § 25.

75 Am Jur 2d, Trial § 192 *et seq.*

any wilful creation of an obstruction to the performance of judicial duty.

6. CONTEMPT—SUMMARY PUNISHMENT—OPEN COURT—OBSTRUCTION OF ADMINISTRATION OF JUSTICE.

A court, where immediate corrective action is necessary, may vindicate its dignity and authority by punishing summarily any lawyer, litigant, witness or other person who, in the judge's presence in open court, wilfully and contumaciously obstructs the administration of justice.

7. CONTEMPT—POWERS—LIMITS.

The limits of the power to punish for contempt are the least possible power adequate to the end proposed.

8. CONTEMPT—SUMMARY CONVICTIONS—RUNNING CONTROVERSY—OBSTRUCTION OF ADMINISTRATION OF JUSTICE.

A summary conviction of a lawyer for contempt should be reversed where the judge who found the lawyer in contempt had become embroiled in a running controversy with the lawyer and where the lawyer's conduct did not so interfere with the administration of justice that it demanded immediate punishment.

9. JUDGES—DISQUALIFICATION—LAWYERS—CONTEMPT.

A judge should not sit in judgment upon the misconduct of counsel where contempt is charged and the charge is entangled with the judge's personal feeling against the lawyer.

Appeals from Detroit Recorder's Court, Traffic and Ordinance Division, William C. Hague, J. Submitted November 4, 1976, at Detroit. (Docket Nos. 23715, 25145.) Decided December 10, 1976. Leave to appeal applied for.

Sheldon Meizlish was twice convicted of contempt while representing a client in recorder's court before Judge William C. Hague. Defendant appeals. Reversed and remanded.

*Alphonso R. Harper* and *Neil A. Miller,* for Judge William C. Hague.

*Coleman E. Klein,* for defendant.

Amicus Curiae: *Sheridan V. Holzman* and *Joel M. Shere,* for the American Civil Liberties Union of Michigan.

Before: R. M. MAHER, P. J., and D. E. HOLBROOK and N. J. KAUFMAN, JJ.

R. M. MAHER, P. J. Judge William C. Hague twice found defendant, an attorney, in contempt during proceedings before Judge Hague in Recorder's Court, Traffic and Ordinance Division. Defendant appeals both convictions.

I

After Randolph Wedler, Robert Hart and James Khatami were charged with disturbing the peace, they appeared before Traffic Court Referee George T. Ryan. The referee recommended convictions for all three, with sentences of 5 days in Detroit House of Corrections and fines of $100. The three defendants then appeared before Judge Hague. When Hart told Judge Hague that he wanted to "appeal" the referee's determination, Judge Hague set bond at $750. Defendant Meizlish, representing Wedler, then appeared before Judge Hague and informed Judge Hague that Wedler also wished a trial on the charge of disturbing the peace.

Judge Hague, misunderstanding the function of a referee in his court, stated that Wedler had had a trial and was found guilty. An appearance before a referee is not a trial, and a referee makes only recommendations, not findings of guilt. MCLA 725.19; MSA 27.3959. *Recorder's Court Presiding Judge v Third Judicial Circuit Judge,* 340 Mich 193; 65 NW2d 320 (1954).

Defendant Meizlish asked Judge Hague to release his client Wedler on personal recognizance

pending trial. Judge Hague refused to listen to
defendant's argument that Wedler was certain to
appear for trial because the charge against him
grew out of a political incident and he needed the
vindication of the court. Instead, Judge Hague
stated his intention to require a bond. Discussion
about the amount of the bond led to defendant's
contempt:

"*The Court:* When I set this aside, the five days, One
Hundred Dollars or fifteen days, he is going to put up a
bond.

"*Mr. Meizlish:* All I'm asking your Honor is if you
can't do it on a personal bond, set a nominal bond.
There is no way my client * * *

"*The Court:* The bond will only be set for the purpose
for which it was intended * * *

"*Mr. Meizlish:* What are you going to set it at your
Honor?

"*The Court:* To guarantee his appearance in Court.

"*Mr. Meizlish:* If you could set it at One Hundred
Dollars * * *

"*The Court:* I think we can get together on that basis.

"*Mr. Meizlish:* And * * *

"*The Court:* The bond will be One Thousand Dollars
Bail Bond.

"*Mr. Meizlish:* Your Honor, my client can't afford
that.

"*The Court:* He needs One Hundred Dollars.

"*Mr. Meizlish:* Your Honor set it at One Hundred
Dollars.

"*The Court:* Counsel, this argument is null. I have
ended that phase of it. Just a minute. I've ended that
phase of it. The bond is One Thousand Dollars bail
bond. The Court date will be May 5th at nine o'clock.
I'm granting your motion to * * * I'll grant you an
appeal from the referee's decision upon the posting of a
One Thousand Dollar bail bond.

"*Mr. Meizlish:* Your Honor, let me say one more
word.

*"The Court:* If it's on this question * * *

*"Mr. Meizlish:* Just on the bond.

*"The Court:* You're out of order counsel.

*"Mr. Meizlish:* I know.

*"The Court:* You're out of order.

*"Mr. Meizlish:* I know.

*"The Court:* I've ruled you out of order. I mean stop on this case.

*"Mr. Meizlish:* Let me * * *

*"The Court:* Counsel, I'll hold you in contempt of Court if you say another word on this. The Court * * * I'm going to fine you One Hundred Dollars for contempt of Court if you say anything else.

*"Mr. Meizlish:* I have to say another word to adequately represent my client.

*"The Court:* I'll hold him in contempt of Court. Sit in the box."

An attorney cannot be held in contempt merely for asserting the interests of his client.

"The arguments of a lawyer in presenting his client's case strenuously and persistently cannot amount to a contempt of court so long as the lawyer does not in some way create an obstruction which blocks the judge in the performance of his judicial duty." *In re McConnell,* 370 US 230, 236; 82 S Ct 1288; 8 L Ed 2d 434 (1962).

In *McConnell,* the Supreme Court reversed the contempt conviction of an attorney who, after being instructed to cease a line of questioning, responded that he had a right to ask the questions and proposed to do so unless a bailiff stopped him. The court was unwilling to view "a mere statement by a lawyer of his intention to press his legal contention until the court has a bailiff stop him" as an obstruction of justice that would warrant a contempt conviction.

Defendant here was arguing for his client on a

crucial issue; his client, who had already appeared to answer the charge against him, was about to lose his freedom on the basis of a referee's recommendation. The court, apparently deciding the question of bond on the basis of misconceptions about the role of its own subordinates, repeatedly cut off defendant's efforts to argue his client's position. Defendant's dogged attempts to have the court consider his client's position, even after the court's warning, displayed the zeal expected of a criminal attorney.

In *People v Kurz,* 35 Mich App 643; 192 NW2d 594 (1971), Justice (then Judge) LEVIN discussed the possibility of zealous representation leading to a finding of contempt:

> "Unless a lawyer's conduct manifestly transgresses that which is permissible it may not be the subject of charges of contempt. Any other rule would have a chilling effect on the constitutional right to effective representation and advocacy. In any case of doubt, the doubt should be resolved in the client's favor so that there will be adequate breathing room for courageous, vigorous, zealous advocacy." (Footnotes omitted.) 35 Mich App at 651.

Defendant may have been uncooperative with the court's attempt to terminate discussion on his client's bond. This alone, however, cannot result in a finding of contempt.

> "The protection of his client's rights may require that the lawyer resist the wishes of the judge on some matters, and though his resistance should never lead him to act disrespectfully, it may require him to appear unyielding and uncooperative at times. In so doing, he does not contradict his duty to the administration of justice but fulfills his function within the adversary

system." ABA Standards Relating to the Defense Function, Tentative Draft, commentary to standard 1.1(b).

Since the record discloses that defendant's first conviction of contempt was caused by his persistent efforts to present his client's position and not by any wilful creation of an obstruction of the performance of judicial duty, *In re McConnell, supra, People v Kurz, supra,* that conviction must be reversed.

## II

Defendant's second conviction for contempt came after the trial and conviction of Hart, Wedler and Khatami before Judge Hague on the charge of disturbing the peace. Again, the question of a bond provoked a confrontation. Defendant did not think that his clients could immediately produce the $100 set as their appeal bonds.

*"Mr. Meizlish:* The point is if I * * * they might be able to come up with it by tomorrow if they don't have it today.

*"The Court:* Counsel the money will be posted today, not tomorrow and they'll all be sitting in the box. Now will you go in the box please one at a time in the box. If you get the One Hundred Dollars * * *

*"Mr. Meizlish:* I don't think there is any purpose to this your Honor.

*"The Court:* Counsel I want to tell you something. You've made a lot of unnecessary comments in court and I want to advise you of something. I don't have a bad reputation as a judge, but I want to tell you something. When you come in this Court, you refrain from characterizing me. If you don't like me, that is your business, but you don't stand here and do it. You understand? All the legal objections you have put it on the record. They are available to you. I am cautioning you about that.

*"Mr. Meizlish:* I stand behind * * *

*"The Court:* Don't characterize me.

*"Mr. Meizlish:* I stand behind everything that I've stated. I maintain that you have conducted yourself in a manner which is disgraceful to the administration of justice.

*"The Court:* Step back over here counsel. I'm going to find you in contempt of court. I think your remarks are totally uncalled for.

*"Mr. Meizlish:* You cannot find me in contempt of court because I am not obstructing the judicial proceedings.

*"The Court:* You have reflected on the decor *[sic]* of this court. I order you to be arrested and placed in that box and fine you One Hundred Dollars in Contempt of Court. Take this man and put him in jail."

While defendant's statement was highly inappropriate and disrespectful, and might support a contempt conviction, we agree with defendant that a summary conviction here was improper.

The ability of a court to summarily punish contemptuous behavior committed in its presence is recognized, both by statute, MCLA 600.1711; MSA 27A.1711, and in the cases, *Taylor v Hayes,* 418 US 488, 497; 94 S Ct 2697; 41 L Ed 2d 897 (1974). But because summary punishments do not allow for many of the procedural safeguards viewed as essential to fundamental fairness, "[s]ummary punishment always, and rightly, is regarded with disfavor". *Sacher v United States,* 343 US 1, 8; 72 S Ct 451; 96 L Ed 717 (1952), *Taylor v Hayes, supra.* In *People v Kurz, supra,* Justice (then Judge) LEVIN made the following observation on the contempt power:

"Its source is the duty of the court to preserve its own effectiveness, to sustain its power. The same necessity which gives rise to the contempt power permits the

court, where immediate corrective action is necessary, to vindicate its dignity and authority by punishing summarily any lawyer, litigant, witness, or other person who, in the judge's presence in open court, willfully and contumaciously obstructs the administration of justice. But the necessity which gives rise to the power marks its boundaries: 'the limits of the power to punish for contempt are the least possible power adequate to the end proposed' *[Harris v United States,* 382 US 162, 165; 86 S Ct 352; 15 L Ed 2d 240 (1965)]." 35 Mich App at 656.

Defendant here contends that his remark that Judge Hague found contemptuous was uttered after trial and sentence of his clients, in a courtroom all but empty, and therefore summary disposition was inappropriate. He also argues that since the circumstances did not require immediate corrective action, someone other than Judge Hague should have decided the question.

Our review of the transcript of the jury trial of Hart, Wedler and Khatami has been only cursory, but the transcript reveals a strong antagonism between Judge Hague and defendant Meizlish. Their exchanges both at pretrial proceedings and at trial were often heated. While their comments about each other never descended to the level of abuse displayed in *Mayberry v Pennsylvania,* 400 US 455; 91 S Ct 499; 27 L Ed 2d 532 (1971), their exchanges often had overtones of personal animosity.

Since we are convinced that Judge Hague became "embroiled in a running controversy with * * * [defendant]", *Taylor v Hayes, supra,* 418 US at 501, and not persuaded that the defendant's conduct so interfered with the administration of justice that it demanded immediate punishment, defendant's conviction and sentence by Judge Hague cannot stand.

"The pith of this rather extraordinary power to punish without the formalities required by the Bill of Rights for the prosecution of federal crimes generally, is that the necessities of the administration of justice require such summary dealing with obstructions to it. It is a mode of vindicating the majesty of law, in its active manifestation, against obstruction and outrage. The power thus entrusted to a judge is wholly unrelated to his personal sensibilities, be they tender or rugged. But judges also are human, and may, in a human way, quite unwittingly identify offense to self with obstruction to law. Accordingly, this Court has deemed it important that district judges guard against this easy confusion by not sitting themselves in judgment upon misconduct of counsel where the contempt charged is entangled with the judge's personal feeling against the lawyer." *Offutt v United States,* 348 US 11, 14; 75 S Ct 11; 99 L Ed 11 (1954).

See also *Taylor v Hayes, supra, Johnson v Mississippi,* 403 US 212; 91 S Ct 1778; 29 L Ed 2d 423 (1971), *In re Henry,* 369 Mich 347; 119 NW2d 671 (1963). *People v Kurz, supra.*

Defendant's second conviction for contempt is reversed and remanded for hearing and disposition before another judge.