*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CONTEMPT OF KATHY H. MURPHY.

| | |
|---|---|
| PEOPLE OF THE STATE OF MICHIGAN, | FOR PUBLICATION<br>February 9, 2023<br>9:10 a.m. |
| Plaintiff-Appellee, | |
| v | No. 360560 |
| | Wayne Circuit Court |
| KATHY H. MURPHY | LC No. 19-005667-01-AR |
| Defendant-Appellant. | |

Before: M.J. KELLY, P.J., and BOONSTRA and SWARTZLE, JJ.

SWARTZLE, J.

A judge observes contemptuous behavior by an attorney in open court, but off the record. The judge immediately holds a summary proceeding and finds the attorney criminally responsible. The judge fails, however, to describe the attorney's statements on the record, and on appeal, the criminal-contempt conviction must be reversed for this reason. Does double jeopardy prohibit a subsequent nonsummary proceeding on remand? As explained, the answer is *No*, and we affirm.

## I. BACKGROUND

The underlying factual and procedural background was set forth in detail by the circuit court on appeal from the district court, and we need not go into detail here. Before proceeding further, however, a brief discussion about contempt proceedings will help guide our discussion.

"Contempt of court is a willful act, omission, or statement that tends to impair the authority or impede the functioning of a court." *In re Contempt of Robertson*, 209 Mich App 433, 436; 531 NW2d 763 (1995). Contempt can either be civil or criminal in nature. There is no dispute that Murphy's contempt was criminal in nature, and therefore we need not spend time with civil contempt.

MCL 600.1711 defines when a court may use summary proceedings to punish contemptuous behavior. "When contempt is committed in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both." MCL

-1-

600.1711(1). This is called "direct contempt," and this Court has explained that direct contempt does not require "a separate hearing before the court imposes any proper sanctions because all facts necessary to a finding of contempt are within the personal knowledge of the judge." *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 712; 624 NW2d 443 (2000) (cleaned up). In sum, direct contempt can be resolved with a summary proceeding.

Logically enough, the alternative to direct contempt is "indirect contempt." "If the contemptuous conduct occurs outside the court's direct view, i.e., it is 'indirect' contempt, the court must hold a hearing to determine whether the alleged contemnor actually committed contempt." *Id*. at 712-713 (cleaned up). As our Legislature set forth in MCL 600.1711(2), "When any contempt is committed other than in the immediate view and presence of the court, the court may punish it by fine or imprisonment, or both, after proof of the facts charged has been made by affidavit or other method and opportunity has been given to defend." This nonsummary proceeding is akin to a criminal bench trial, and it is undisputed that double jeopardy applies to a contempt conviction arising from such a proceeding. *United States v Dixon*, 509 US 688, 696; 113 S Ct 2849; 125 L Ed 2d 556 (1993). The primary question on appeal is whether double jeopardy similarly applies to a contempt conviction arising from a summary criminal contempt proceeding.

Returning to the facts of this appeal, Murphy and another attorney represented a criminal defendant during a preliminary examination in district court. Murphy purportedly made contemptuous statements in open court, but while the district court was off the record. The district court judge immediately held a summary proceeding and found Murphy criminally liable for contempt of court. The district court judge sentenced Murphy to several days in jail, but the judge delayed the sentence for a few days so that the preliminary examination could proceed. Murphy subsequently served her jail sentence.

Murphy appealed the contempt conviction to the circuit court. The circuit court heard oral arguments and subsequently issued a thorough written opinion. The circuit court concluded that the district court judge had abused her discretion because the judge "did not specify what happened when making her factual findings." Thus, it was "impossible for the [circuit court] to find that the district court had sufficient evidence to hold Murphy in contempt." The circuit court further explained, "Here, the evidence does not support [the district court judge's] findings. This is not necessarily due to a lack of evidence; rather it is due to a lack of competent evidence." The circuit court reversed the district court, vacated Murphy's contempt conviction, and remanded for a nonsummary proceeding before a different district court judge.

In a motion for reconsideration, Murphy argued that remand for a nonsummary proceeding would violate her constitutional right against being held twice in jeopardy. According to Murphy, a reversal on appeal based on insufficient evidence is legally equivalent to an acquittal, and, therefore, she could not be lawfully tried again on the same contempt charge. The circuit court denied the motion, relying on two principle points—first, the reversal was not based on insufficient evidence but rather insufficient findings by the district court judge, and second, the case law was unclear whether double jeopardy applies in the context of a summary criminal contempt proceeding.

Murphy appealed to this Court by leave granted on the questions presented, *In re Contempt of Murphy*, unpublished order of the Court of Appeals, entered May 2, 2022 (Docket No. 360560), and we heard oral arguments on her appeal in early January 2023.

## II. ANALYSIS

On appeal, Murphy claims that double jeopardy applies to summary criminal contempt proceedings and, when a contempt conviction is reversed for insufficient evidence, double jeopardy prohibits retrial for that same contemptuous behavior. Murphy's claims involve questions of constitutional law, and we review these de novo. *People v Szalma*, 487 Mich 708, 715; 790 NW2d 662 (2010).

## A. DOUBLE JEOPARDY

The United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." US Const, Am V. Our Michigan Constitution similarly provides that "[n]o person shall be subject for the same offense to be twice put in jeopardy." Const 1963, art 1, § 15. "We have interpreted our double-jeopardy provision consistently with the federal provision." *People v Wafer*, 509 Mich 31, 37; ___ NW2d ___ (2022).

"The prohibition against double jeopardy protects individuals in three ways: (1) it protects against a second prosecution for the same offense after acquittal, (2) it protects against a second prosecution for the same offense after conviction, and (3) it protects against multiple punishments for the same offense." *Id*. at 37-38. "This protection attaches once the defendant is put to trial before the trier or fact, whether it be a jury or a judge." *People v Beck*, ___ Mich ___, ___; ___ NW2d ___ (Docket Nos. 160668, 160669), slip op at 4, (2022).

## B. CONSTITUTIONAL AVOIDANCE

Before reaching the primary question—does double jeopardy bar a nonsummary proceeding on remand—we first consider whether we can avoid this question under the constitutional-avoidance doctrine. *People v McKinley*, 496 Mich 410, 415-416; 852 NW2d 770 (2014). Double jeopardy does, indeed, treat a reversal on appeal for insufficient evidence as legally equivalent to an acquittal and, on that basis, double jeopardy bars retrial on remand. *McDaniel v Brown*, 558 US 120, 131; 130 S Ct 665; 175 L Ed 2d 582 (2010). But, a reversal for a similar-but-distinct reason, i.e., the conviction was against the great weight of the evidence, is not barred by double jeopardy. See *Tibbs v Florida*, 457 US 31; 102 S Ct 2211; 72 L Ed 2d 652 (1982). Thus, the precise ground on which reversal is based is a key matter for purposes of double jeopardy.

Here, the circuit court explained that there was not a lack of sufficient evidence supporting Murphy's contempt conviction, but rather a lack of sufficient *competent* evidence or, otherwise described, a lack of sufficient *findings*. This is a rather fine line to draw, but it is understandable. It is the rare instance when a judge holds a person in direct criminal contempt of court for behavior that occurs in open court, but that behavior is not adequately described by the judge or otherwise in the record. When contemptuous behavior occurs in open court but off the record, it is imperative that the judge make an adequate record before holding the person in contempt, 17 Am Jur 2d, Contempt, § 185, pp 642-644, and we agree with the circuit court that this was not done here.

With that said, this circumstance is different than a bench trial, for example, where the record has sufficient evidence in it to support a judge's ultimate finding, but the judge fails to make specific findings to justify that ultimate finding. Here, we literally have nothing in terms of what was said, to whom it was said, in what tone and context it was said, etc. The record is bereft of either evidence in the record or description by the district court judge. In other words, this record arguably exhibits *both* insufficient evidence *and* insufficient competent evidence. In this circumstance, we will err on the side of caution and proceed as if the reversal was based, at least in part, on insufficient evidence.

There is case law in Michigan standing for the proposition that, when a contempt conviction from a summary proceeding is reversed on appeal, the proper remedy is a remand for a new, nonsummary proceeding. See *In re Scott*, 342 Mich 614; 71 NW2d 71 (1955); *In re Meizlish*, 72 Mich App 732; 250 NW2d 525 (1976). Yet, neither *In re Scott* nor *In re Meizlish* involved a reversal for insufficient evidence. See *In re Scott*, 342 Mich at 617-618, 622; *In re Meizlish*, 72 Mich App at 740-741. Accordingly, precedent does not give us a more narrow ground on which to stand, and therefore we turn to Murphy's primary question on appeal—does double jeopardy attach to a conviction from a summary criminal contempt proceeding?

## C. DOUBLE JEOPARDY AND SUMMARY CRIMINAL CONTEMPT PROCEEDINGS

On this question, Murphy argues that courts have recognized that double jeopardy attaches to a criminal contempt conviction arising from a nonsummary proceeding. Given that both types of proceeding involve contemptuous behavior, and a criminal conviction can result from either type of proceeding, Murphy makes the argument that double jeopardy must likewise extend to summary proceedings as well. While her argument has some rhetorical weight, it ultimately fails.

Double jeopardy can indeed bar a subsequent criminal prosecution on the same charge for the same conduct, though not in every circumstance. Broadly speaking, when a criminal conviction is reversed on appeal, double jeopardy usually does not bar reprosecution. *Bravo-Fernandez v United States*, 580 US 5, 18; 137 S Ct 352; 196 L Ed 2d 242 (2016). Trial errors can result in a criminal conviction being reversed by an appellate court, with the remedy being a remand for a new trial. See, e.g., *People v Smith*, 498 Mich 466, 487-488; 870 NW2d 299 (2015) (remanding for new trial due to prosecutorial misconduct); *People v Ramsey*, 503 Mich 941; 921 NW2d 538 (2019) (remanding to this Court to determine whether the decision to grant a new trial for a verdict against the great weight of the evidence was within the range of principled outcomes of the trial court). Only in certain circumstances will jeopardy attach to a conviction reversed on appeal; for example, a reversal based on insufficient evidence will preclude retrial, as mentioned earlier. Thus, the mere fact that Murphy was criminally convicted, and that conviction was reversed on appeal, does not, by itself, imply that double jeopardy must bar a nonsummary proceeding on remand.

Moreover, while it is the case that both summary and nonsummary proceedings involve the punishment of contemptuous behavior, the purpose and nature of the proceedings vary in material ways. A summary proceeding is meant to address and punish contemptuous behavior immediately. 17 Am Jur 2d, Contempt, §§ 1, 7, pp 468, 474. Judges must have some authority to maintain order in their courtrooms separate from reliance on the political branches of government. *Id.* § 153, p 598. As the U.S. Court of Appeals for the Seventh Circuit explained, "The need for

the court to conduct its duties is the fundamental rationale underlying the court's summary contempt powers." *FTC v Trudeau*, 606 F3d 382, 389 (CA 7, 2010).

Consistent with the purpose, the nature of summary proceedings is quite distinct from other criminal proceedings. No charges are filed and no evidence is taken—the judge is, in a real sense, the "victim, prosecutor, judge, and jury." 17 Am Jur 2d, Contempt, § 189, p 649. In *Trudeau*, the Seventh Circuit described the proceeding as follows:

> The use of summary contempt power is proper only for charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent demoralization of the court's authority before the public. [*Trudeau*, 606 F3d at 386 (cleaned up).]

This is consistent with Michigan law. MCL 600.1711(1); *In re Scott*, 342 Mich at 618-620.

Given the swiftness of conviction and lack of typical process, summary proceedings are disfavored and can be used only in rare circumstances. *Sacher v United States*, 343 US 1, 8; 72 S Ct 451; 96 L Ed 717 (1952). With that said, this procedure—unique in American criminal law— has been justified because the judge observes the contemptuous behavior first-hand in open court. *In re Scott*, 342 Mich at 618-619. Courts have consistently held that summary criminal contempt proceedings satisfy due process. *In re Contempt of Warriner*, 113 Mich App 549, 554-555; 317 NW2d 681 (1982).

In contradistinction, nonsummary criminal contempt proceedings are much more akin to a traditional criminal bench trial. This type of proceeding involves allegedly contemptuous behavior that has occurred outside the judge's direct observation in open court; for example, a party's failure to follow a court's written order. See, e.g., *In re Contempt of Henry*, 282 Mich App 656, 673-677; 765 NW2d 44 (2009). The purpose of a nonsummary proceeding is different than a summary one, as immediate correction and punishment are not required, and therefore more traditional due-process protections can be observed, including the notice of charges, the assistance of counsel, and a public hearing. *Dixon*, 509 US at 696. For these reasons, the U.S. Supreme Court held in *Dixon* that double jeopardy applies to nonsummary proceedings; but at the same time, both Justice Scalia (writing for the majority) and Justice White (writing in dissent) agreed that this did not imply that double jeopardy extended to summary proceedings. *Id.* at 697 n 1 (Scalia, J, writing for the majority); *id*. at 723 n 1 & 729 n 4 (White, J, dissenting).

This contradistinction highlights a key difference between the two procedures. One of the purposes of the guarantee against double jeopardy is to protect a person from having to endure the cost, uncertainty, embarrassment, and general harassment of multiple criminal trials on the same charge for the same conduct. *Blueford v Arkansas*, 566 US 599, 605; 132 S Ct 2044; 182 L Ed 2d 937 (2012); 21 Am Jur 2d, Criminal Law, § 269, p 405. In a summary proceeding, the person does not participate in a criminal trial or quasi-trial proceeding. The judge takes the matter up immediately, no evidence is taken or jury impaneled, and sentencing is swift (even if the enforcement is slightly delayed so that court proceedings can conclude without further disruption). This is in stark contrast to a regular criminal trial or a nonsummary criminal contempt proceeding,

where matters can take days, weeks, months, and even years, evidence is gathered and submitted to the court, etc. With a summary proceeding, in sum, there is no possibility of "the harassment of successive trials." *United States v Rollerson*, 449 F2d 1000, 1004 (CA DC, 1971).

Courts outside of this jurisdiction have relied upon this absence of successive trials in holding that double jeopardy does not attach to a criminal conviction arising from a summary contempt proceeding. See, e.g., *Rollerson*, 449 F2d at 1004; *United States v Mirra*, 220 F Supp 361, 366 (SDNY, 1963); *Marino v State*, 165 So 3d 60, 61 (Fla App, 2015); *People v Totten*, 143 Ill App 3d 132, 134; 491 NE2d 924 (1986); *Commonwealth v Warrick*, 344 Pa Super 611, 613; 497 A2d 259 (Pa App, 1985); *State v Warren*, 186 NJ Super 35, 44-45; 451 A2d 197 (NJ Sup Ct, 1982). There is some academic work that suggests that double jeopardy should apply to summary proceedings, but in making the argument, the work downplays a court's need to use its contempt authority immediately. In one article, for instance, the author suggests that rather than being held in criminal contempt in a summary proceeding, a recalcitrant criminal defendant can simply be bound and gagged or jailed for civil contempt until such time that the defendant promises to behave. Rudstein, *Double Jeopardy and Summary Contempt Proceedings*, 69 Notre Dame L Rev 691, 720 (1994). These and similar suggestions are belied by case law and decades, if not centuries, of actual courtroom experience. See, e.g., *Pounders v Watson*, 521 US 982, 988-989; 117 S Ct 2359; 138 L Ed 2d 976 (1997); *In re Terry*, 128 US 289, 309; 9 S Ct 77; 32 L Ed 405 (1888) (explaining that "a direct contempt is an open insult in the face of the court to the persons of the judges while presiding, or a resistance to its powers in their presence"); see also *Illinois v Allen*, 397 US 337, 344; 90 S Ct 1057; 25 L Ed 2d 353 (1970) ("Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold.").

Accordingly, we join our sister jurisdictions in holding that summary criminal contempt proceedings are not subject to the constitutional protections against double jeopardy. As compared to regular criminal trials and nonsummary proceedings, summary proceedings serve different purposes and, more importantly, are subject to materially different procedures. A person who is held in criminal contempt in a summary proceeding has not been subject to the harassment of a criminal trial. If the person is successful on appeal and has the conviction reversed, then remand for a nonsummary proceeding before a different judge does not pose a risk of successive trials.

## III. CONCLUSION

For these reasons, we conclude that if a criminal conviction for contempt of court from a summary proceeding is reversed on appeal, double jeopardy will not bar the matter from being taken up in a nonsummary proceeding on remand. The circuit court did not err in remanding this matter for a nonsummary criminal contempt proceeding before a different district court judge. If

Murphy is held criminally liable at the conclusion of the nonsummary proceeding, then the district court will credit her for time served.

Affirmed.

/s/ Brock A. Swartzle
/s/ Michael J. Kelly
/s/ Mark T. Boonstra