# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

*In re* CONTEMPT OF KATHY H. MURPHY

Docket No. 165666. Argued on application for leave to appeal May 7, 2025. Decided July 25, 2025.

Kathy H. Murphy, an attorney, appealed in the Wayne Circuit Court the judgment of the 36th District Court, Kenyetta S. Jones, J., finding Murphy in criminal contempt of court following a summary proceeding. Murphy was representing a client in a preliminary examination before the district court when, during a recess while the court was off the record, she purportedly engaged in disrespectful conduct in direct view of the judge. Shortly after the preliminary examination resumed, the judge ordered another recess and then reconvened for a summary contempt proceeding against Murphy. The district court found Murphy in contempt of court and sentenced her to serve two days in jail. On appeal, the circuit court, Noah P. Hood, J., reversed the district court's order and vacated Murphy's conviction, citing the district court's failure to make a record of Murphy's conduct that constituted criminal contempt and stating that it was impossible for the circuit court to find that there was sufficient evidence to support the conviction. The circuit court remanded for a nonsummary proceeding before a different district court judge. Murphy moved for reconsideration, arguing that remand for a nonsummary proceeding would violate her double-jeopardy protections. The circuit court denied the motion, and Murphy appealed in the Court of Appeals. The Court of Appeals (M. J. KELLY, P.J., and BOONSTRA and SWARTZLE, JJ.) affirmed, holding that when a summary criminal-contempt conviction was reversed on appeal, the prohibition against double jeopardy did not bar a subsequent nonsummary proceeding; the Court noted that the record was bereft of evidence or a description of Murphy's allegedly contemptuous conduct, but held that remand was appropriate because summary contempt proceedings were not subject to double-jeopardy protections. 345 Mich App 500 (2023). Murphy applied for leave to appeal in the Supreme Court, and in lieu of granting leave, the Court ordered oral argument on the application. 513 Mich 948 (2023).

In an opinion by Justice THOMAS, joined by Chief Justice CAVANAGH and Justices WELCH and BOLDEN, the Supreme Court, in lieu of granting leave to appeal, *held*:

Remand for nonsummary proceedings after a summary contempt conviction has been vacated for insufficient findings is improper because it would be futile and exceed the scope of the judiciary's inherent contempt powers. The Supreme Court reversed the judgment of the Court of Appeals to the extent that it affirmed the circuit court's remand order; reversed the circuit court's

order to the extent that it remanded the case to the district court for further proceedings; and vacated the Court of Appeals' holdings related to double jeopardy because it was unnecessary to reach that issue.

In a summary contempt proceeding, the court must show, through the transcript or by making a record, what occurred and make findings as to how the alleged conduct constituted contempt. In this case, the district court had authority to proceed summarily against Murphy because the alleged contumacious conduct took place in the judge's presence, while the court was sitting, and the judge believed that immediate action was necessary. Caselaw from Michigan and other jurisdictions provided that when an appellate court reverses a contempt conviction because a lower court erred by proceeding summarily instead of nonsummarily, a remand to allow the nonsummary proceeding is appropriate because nonsummary proceedings should have been used in the first instance and could be appropriate on remand. In this case, however, the question was whether an appellate court may remand for nonsummary proceedings after it vacates a summary contempt conviction because the record is insufficient to support the conviction, even though summary proceedings were initially appropriate. This issue had not been addressed by Michigan courts, but other jurisdictions had concluded that remand was not appropriate in this situation because the punishment imposed had been effectuated, the purpose of the contempt power had been served, and, therefore, remanding to correct the procedural error would be futile. In this case, the record was not adequate for reviewing courts to determine whether there was sufficient evidence to support the criminal-contempt conviction, the proceeding in which the allegedly contemptuous conduct occurred had long since concluded, and there was no allegation that Murphy had refused to comply with a lawful order of the court; therefore, remand would serve no purpose. Remand for nonsummary proceedings might not be inappropriate in all matters when a finding of summary contempt is reversed or vacated for other reasons, such as when summary proceedings were not permissible in the first instance; however, in this case, remanding to give the district court an opportunity to provide adequate evidence to support the conviction would be futile, because the proceedings in which the alleged contumacious conduct occurred concluded years ago and the purpose of the contempt proceeding—to preserve order in the courtroom—had been fully served.

Court of Appeals' opinion vacated as to Part II(B) and Part II(C) and reversed as to Part III; circuit court's order reversed in part.

Justice WELCH, concurring, agreed with the majority that a remand for nonsummary proceedings would be futile, but wrote separately to explain why the Double Jeopardy Clauses of the state and federal Constitutions also barred remand. Jeopardy attached in this case when the district court initiated summary contempt proceedings because Murphy faced the risk of criminal punishment. Double-jeopardy protections exist in part to mitigate the risk that innocent people are convicted after multiple trials and to prevent the prosecution from honing its trial strategies and perfecting its evidence through successive attempts at conviction. Multiple proceedings in this case would increase the risk of Murphy being convicted even if she is innocent. The same-elements test did not permit a subsequent proceeding in this case because the summary proceedings and the nonsummary proceedings ordered by the circuit court involved allegations of the same offense. Further, the trial court is the de facto prosecutor in summary contempt proceedings; accordingly, the absence of a sufficient factual record is not merely a procedural error. Because

the circuit court found the evidence legally insufficient, the Double Jeopardy Clauses precluded a second proceeding.

Justice BERNSTEIN, joined by Justice ZAHRA, dissenting, disagreed with the majority that remanding for nonsummary proceedings after a summary contempt conviction is vacated was inappropriate and that a remand would be futile and exceed the judiciary's inherent contempt powers. Neither assertion was supported by the facts or the laws of this state; the majority relied on out-of-state authorities that applied rules and remedies that Michigan does not have and addressed distinguishable uses of the contempt power. In particular, the majority relied on federal court decisions applying FR Crim P 42(a), for which Michigan does not have an analogous rule that would require the circuit court to accept the trial record as presented. In Michigan, in cases in which the court acts as the fact-finder and the facts are insufficient to facilitate appellate review, this Court has remedied the error by remanding for necessary fact-finding. A remand here would not have been an expansion of the contempt power; it simply would have allowed the contempt power to operate properly while facilitating appellate review.

Justice HOOD did not participate in the disposition of this case because the Court considered it before he assumed office and because he presided over this case in the circuit court.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED July 25, 2025

S T A T E   O F   M I C H I G A N

SUPREME COURT

*In re* CONTEMPT OF KATHY H. MURPHY.

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v            No. 165666

KATHY H. MURPHY,

      Defendant-Appellant.

---

BEFORE THE ENTIRE BENCH (except HOOD, J.)

THOMAS, J.

Appellant, Kathy Murphy, was summarily convicted of criminal contempt in the district court. On appeal, the circuit court vacated Murphy's contempt conviction because it found that the district court's findings were insufficient to support the conviction. The circuit court remanded for nonsummary contempt proceedings. Murphy objected to the

circuit court's order, arguing that further proceedings on remand would violate the Double Jeopardy Clauses of the federal and Michigan Constitutions. US Const, Am V; Const 1963, art 1, § 15. The circuit court and the Court of Appeals ruled against Murphy, holding that the prohibition against double jeopardy does not bar subsequent nonsummary contempt proceedings after vacation of a summary contempt conviction.

We decline to reach the constitutional question. Instead, we hold that remand for nonsummary proceedings after a summary contempt conviction has been vacated for insufficient findings is improper because it would be futile and exceed the scope of the judiciary's inherent contempt powers. Accordingly, we reverse the part of the Court of Appeals' opinion that affirms the circuit court's remand order and we reverse the part of the January 25, 2021 order of the Wayne Circuit Court remanding the case to the district court for further proceedings. We vacate the Court of Appeals' holdings related to double jeopardy because it is unnecessary to reach that issue.

## I. FACTS AND PROCEDURAL HISTORY

Murphy, an attorney, was representing a criminal defendant at his preliminary examination in the district court. The district court judge ordered a five-minute recess after a disturbance in the courtroom. During that recess—and while the district court was off the record—Murphy purportedly engaged in disrespectful conduct in direct view of the judge. Shortly after the preliminary examination resumed, the judge ordered another recess and then reconvened for a summary contempt proceeding against Murphy. The judge held Murphy in contempt but did not describe Murphy's contumacious conduct with any particularity on the record. The district court suspended Murphy's sentence so that she

2

could represent her client for the remainder of the preliminary examination. Murphy moved for reconsideration. The district court denied the motion and sentenced Murphy to two days in jail, which Murphy served.

Murphy then appealed in the circuit court. The circuit court reversed the district court's order and vacated Murphy's contempt conviction, noting that "the specifics of what Murphy said or did are still unclear." *In re Contempt of Murphy*, unpublished opinion of the Wayne Circuit Court, issued January 25, 2021 (Docket No. 19-5667-01-AR), p 2. Because the record was lacking, the circuit court stated that "it is impossible for the Court to find that the district court had sufficient evidence to hold Murphy in contempt." *Id*. at 12. Further, the circuit court found that the district court judge had "clearly stated the effect of Murphy's conduct" but "never actually stated what Murphy did to warrant the contempt." *Id*. at 13. Accordingly, the circuit court remanded the case to the district court for nonsummary proceedings before a different judge. Murphy moved for reconsideration, arguing that further contempt proceedings on remand would constitute double jeopardy. The circuit court denied reconsideration.

Murphy next sought leave to appeal in the Court of Appeals, which granted leave and affirmed the circuit court in a published opinion. *In re Contempt of Murphy*, 345 Mich App 500, 513; 7 NW3d 72 (2023). The Court of Appeals agreed that the district court's factual findings were lacking:

> Here, we literally have nothing in the record in terms of what was said, to whom it was said, in what tone and context it was said, etc. The record is bereft of both evidence in the transcript and description by the district court judge. [*Id*. at 507.]

The Court of Appeals also determined that remand was appropriate, holding that summary contempt proceedings are not subject to the constitutional protections against double jeopardy. *Id*. at 512-513. Murphy then sought leave to appeal in this Court. In lieu of granting leave, we ordered oral argument on the application. *In re Contempt of Murphy*, 513 Mich 948, 949 (2023).

## II. THE CONTEMPT POWER

### A. STANDARD OF REVIEW

A trial court's decision regarding contempt is reviewed for an abuse of discretion. *DeGeorge v Warheit*, 276 Mich App 587, 591; 741 NW2d 384 (2007). Questions of law related to contempt are reviewed de novo. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 714; 624 NW2d 443 (2000). We also review de novo whether the circuit court exceeded the scope of the contempt power by remanding for additional proceedings. See *id*.

### B. SUMMARY CONTEMPT

Contempt of court is a willful act, omission, or statement that tends to impair the authority or impede the functioning of a court. *Pontiac v Grimaldi*, 153 Mich App 212, 215; 395 NW2d 47 (1986). Michigan courts have an inherent, common-law authority to punish contempt of court. See, e.g., *In re Scott*, 342 Mich 614, 618; 71 NW2d 71 (1955). This inherent power is "essential to the administration of the law," *In re Bradley Estate*, 494 Mich 367, 395; 835 NW2d 545 (2013), because contempt proceedings serve to "vindicate the power and authority of [the] court," *Cross Co v UAW Local No. 155*, 377 Mich 202, 211; 139 NW2d 694 (1966).

4

Courts also possess statutory authority to punish contempt. MCL 600.1701(a) provides that "courts of record[] have power to punish by fine or imprisonment, or both, persons guilty of any neglect or violation of duty or misconduct in . . . cases [including] [d]isorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due to its authority."[1] See also MCL 600.8317 (giving the district court the "same power" to punish contempt as the circuit court) and MCL 600.1711 (providing that contempt committed in the "immediate view and presence of the court" is subject to summary punishment, and contempt committed "other than in the immediate view and presence of the court" may be punished only "after proof of the facts charged has been made by affidavit or other method and opportunity has been given to defend").

Because the "power to punish for contempt is awesome," *People v Matish*, 384 Mich 568, 572; 184 NW2d 915 (1971), courts must use the " 'least possible power adequate to the end proposed' " when punishing contempt, *People v Kurz*, 35 Mich App 643, 656; 192 NW2d 594 (1971), quoting *Harris v United States*, 382 US 162, 165; 86 S Ct 352; 15 L Ed

---

[1] MCL 600.1701 also provides for punishment in the following cases:

> (c) All attorneys, counselors, clerks, registers, sheriffs, coroners, and all other persons in any manner elected or appointed to perform any judicial or ministerial services, for any misbehavior in their office or trust, or for any willful neglect or violation of duty, for disobedience of any process of the court, or any lawful order of the court, or any lawful order of a judge of the court or of any officer authorized to perform the duties of the judge.

> * * *

> (g) Parties to actions, attorneys, counselors, and all other persons for disobeying any lawful order, decree, or process of the court.

2d 240 (1965). Courts thus have the responsibility to apply the contempt power judiciously. *In re Contempt of Auto Club*, 243 Mich App at 708.

To that end, summary proceedings, such as those that occurred in this case, are only appropriate in cases of direct contempt—which is committed in the immediate view and presence of the court—and when the court determines that immediate corrective action is necessary. MCL 600.1711; see *Kurz*, 35 Mich App at 656-657. Indeed, courts must sometimes enforce orders "with speed and dispatch, even summarily," to preserve the power and authority of the court. *Id*. See also *United States v Sheldon*, 5 Blume Sup Ct Trans 337, 344-345 (1829) (explaining that courts need to "have the power to coerce a full and entire obedience or removal of impediments" for administration of the law and that the "removal of impediments cannot be delayed, otherwise the operation of the laws would be suspended").

But summary contempt proceedings lack some of the traditional procedural safeguards present in nonsummary proceedings. See *In re Contempt of Scharg*, 207 Mich App 438, 439-440; 525 NW2d 479 (1994).[2] Therefore, "[s]ummary punishment always, and rightly, is regarded with disfavor . . . ." *Sacher v United States*, 343 US 1, 8; 72 S Ct 451; 96 L Ed 717 (1952). Nonsummary proceedings, on the other hand, require the same

---

[2] The procedure for nonsummary contempt is provided by MCR 3.606, which indicates that for "a contempt committed outside the immediate view and presence of the court, on a proper showing on ex parte motion supported by affidavits, the court shall either (1) order the accused person to show cause, at a reasonable time specified in the order, why that person should not be punished for the alleged misconduct; or (2) issue a bench warrant for the arrest of the person." MCR 3.606(A).

constitutional protections as other criminal prosecutions.  *United States v Dixon*, 509 US 688, 696; 113 S Ct 2849; 125 L Ed 2d 556 (1993).

The contempt power must be used "judiciously and only when the contempt is clearly and unequivocally shown."  *In re Contempt of Dudzinski*, 257 Mich App 96, 109; 667 NW2d 68 (2003).  Whether the proceedings are summary or nonsummary, criminal contempt must be found beyond a reasonable doubt, like any other criminal conviction.  *Porter v Porter*, 285 Mich App 450, 456; 776 NW2d 377 (2009); *Gompers v Bucks Stove & Range Co*, 221 US 418, 444; 31 S Ct 492; 55 L Ed 797 (1911).  As the United States Supreme Court has explained, "[t]here must be adequate facts to support an order for contempt in the face of the court."  *Fisher v Pace*, 336 US 155, 160; 69 S Ct 425; 93 L Ed 569 (1949); see also *Weiss v Burr*, 484 F2d 973, 983 (CA 9, 1973) (explaining that due process requires that the facts supporting a summary contempt proceeding "appear on the face of the transcript"); MCR 2.517(A)(1) (providing that "[i]n actions tried on the facts without a jury or with an advisory jury, the court shall find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment").  In a summary contempt proceeding, which, by definition, addresses conduct that occurred in the presence of the court, two analytically distinct things must therefore be shown.  First, the court must show—either through the existing transcript or through making a record— what occurred, i.e., the "evidence," similar to the evidence put forward by a prosecutor in a traditional criminal case.  Second, it must also make findings as to how the actions that are alleged to have occurred constitute the offense of contempt.

## C. REMAND AFTER SUMMARY CONTEMPT CONVICTION IS VACATED

We concur with the circuit court's assessment that the district court had the authority to proceed summarily against Murphy because the alleged contumacious conduct took place in the judge's presence, while the court was sitting, and the judge believed that immediate action was necessary. See MCL 600.1711. The question, then, is whether an appellate court may remand for nonsummary proceedings after it vacates a summary contempt conviction because the record is insufficient to support the conviction.

Whether an appellate court may remand for a nonsummary hearing when a summary procedure was appropriate in the first instance—but the lower court's decision was reversed on appeal for insufficient findings—has not been addressed in our courts. Caselaw from Michigan and other jurisdictions provides that when an appellate court reverses a contempt conviction because a lower court erred by proceeding summarily instead of nonsummarily in the first instance, a remand to allow the nonsummary proceeding is appropriate. Examples include instances in which summary proceedings were improperly held for indirect contempt, see, e.g., *In re Scott*, 342 Mich at 619 (citing authority holding that allegedly perjured testimony is not within the direct knowledge of the court and reversing a summary contempt conviction), or in which the judge was personally embroiled in the controversy or their objectivity could reasonably be questioned, see, e.g., *Kurz*, 35 Mich App at 659-660; *Mayberry v Pennsylvania*, 400 US 455, 465; 91 S Ct 499; 27 L Ed 2d 532 (1971). In such cases, nonsummary proceedings should have been used in the first instance and could be appropriate on remand.[3] Moreover,

---

[3] Courts may also choose to defer contempt proceedings that otherwise could have been addressed summarily. In these instances of judicial restraint, nonsummary proceedings are

8

summary proceedings are generally inappropriate when the contumacious conduct does not "demand[] immediate punishment." *In re Meizlish*, 72 Mich App 732, 740; 250 NW2d 525 (1976) (remanding for nonsummary proceedings when the allegedly contumacious conduct occurred after the trial and sentencing of the defendant-attorney's clients "in a courtroom all but empty" and the pretrial and trial proceedings were marked by "a strong antagonism" between the trial judge and the defendant-attorney).

We now turn to the question presented in this appeal, i.e., whether an appellate court may remand for nonsummary proceedings following vacation of a summary contempt conviction when summary proceedings were initially appropriate. We have examined cases from other jurisdictions in which, similarly to this case, the record of the summary contempt proceeding was insufficient to support the contempt conviction or to allow appellate review. The United States Court of Appeals for the Fifth Circuit has stated that when a trial judge fails to state the facts necessary to support a finding of contempt, the purpose of which is to preserve order during trial, the contempt conviction must be vacated and remand is inappropriate. See, e.g., *United States v Camil*, 497 F2d 225, 228-230 (CA 5, 1974); *United States v Schrimsher*, 493 F2d 842, 845 (CA 5, 1974); cf. *United States v Vano*, 496 F2d 1195, 1195-1196 (CA 5, 1974) (allowing remand to comply with technical requirements of federal contempt when the record was adequate to support the contempt adjudication). The *Camil* court, for example, expressed concerns about the need to "limit the contempt power to the least possible power adequate to the end proposed" and to "be

---

appropriate. See, e.g., *In re Contempt of Scharg*, 207 Mich App at 440-441 (vacating the attorney-contemnor's order of adjudication and sentence for contempt following deferred summary contempt proceedings and remanding for nonsummary proceedings before a different judge so as not to call into question the objectivity of the court).

meticulously careful to observe procedural safeguards." *Camil*, 497 F2d at 229 (cleaned

up). The court explicitly indicated that it would not remand to the lower court to correct a

procedural error because the punishment imposed had been effectuated and the purpose of

the contempt power "ha[d] been served." *Id*. at 230. Thus, the court could "conceive of

no more futile charade" than remanding for the lower court to correct the procedural error.

*Id*. Similarly, the *Schrimsher* court affirmed that the procedural requirements of summary

proceedings must be "strictly observed" due to the "danger of abuse inherent" in summary

contempt proceedings and dismissed the contempt proceedings because the trial where the

alleged conduct took place had "long since concluded." *Schrimsher*, 493 F2d at 844-845.[4]

---

[4] Justice BERNSTEIN dwells on the fact that *Camil* and *Schrimsher* involved Rule 42(a) of the Federal Rules of Criminal Procedure. Because Michigan lacks a similar rule, Justice BERNSTEIN finds these cases inapposite. We disagree.

First, although it is true that Michigan does not have a codified analogue to Rule 42(a), the reasoning of *Camil* and *Schrimsher* still applies with full force here. Indeed, the foundation on which they rest—that the awesome contempt power must be carefully circumscribed—mirrors past pronouncements on the contempt power from this Court, our Court of Appeals, and the United States Supreme Court. See, e.g., *Camil*, 497 F2d at 229 (explaining the need to "limit the contempt power to the least possible power adequate to the end proposed") (quotation marks and citation omitted), and *Kurz*, 35 Mich App at 656, quoting *Harris*, 382 US at 165 (also explaining that courts must use the " 'least possible power adequate to the end proposed' " when punishing contempt). See also *Matish*, 384 Mich at 572 (reasoning that the "power to punish for contempt is awesome and carries with it the equally great responsibility to apply it judiciously"). Given this overlap, *Camil* and *Schrimsher* remain persuasive here, notwithstanding that a different rule was implicated in those cases.

Second, because our judicial contempt power is an inherent one, so too is the delineation of its scope and use. See *In re Huff*, 352 Mich 402, 416; 91 NW2d 613 (1958) (vesting in the judiciary the "procedures to effectuate" the inherent contempt power). This responsibility includes answering the present question—whether remand for nonsummary proceedings is an appropriate procedure when a trial court fails to make a sufficient record of a summary contempt proceeding. The lack of a Rule 42(a) analogue in our court rules is therefore inconsequential here.

State courts have reached similar conclusions. For instance, the Georgia Court of Appeals held that remand for nonsummary proceedings is inappropriate when the trial court fails in the initial summary proceedings to establish a sufficient record to support a finding of contempt. *In re Shafer*, 216 Ga App 725, 726-727; 455 SE2d 421 (1995). That court reasoned that "[b]ecause, in effect, the trial judge is the judge, jury and executioner with regard to direct, summary contempt findings, it is imperative for purposes of review that the record clearly reflect the behavior of both the court and the offender." *Id*. at 726. If the trial court's contempt order does not "contemporaneously set forth with specificity those comments or actions which it found objectionable" and the allegedly contumacious conduct is "unsupported by a properly perfected record," the contempt order is therefore "insufficient for appellate review." *Id*. at 726-727. As to remand for further proceedings, the *Shafer* court concluded that "[r]emand is only appropriate in those cases where there was a proper record made *at the time* and the order is inadequate but could be made adequate upon review of the existing record." *Id*. at 727.

Likewise, the Alabama Court of Civil Appeals, relying on *Schrimsher*, declined to remand to the trial court for nonsummary proceedings after reversing the trial court's finding of contempt because the trial judge had failed to prepare a signed, written order as required under the state rules of procedure. *Howard v Wood*, 47 So 3d 1280, 1282 (Ala Civ App, 2010). The court agreed with the parties that because the trial judge "was concerned with maintaining order and decorum in the courtroom" and the trial had "long since concluded," remand "would serve no purpose." *Id*.[5]

---

[5] The dissent again correctly notes that the Alabama Court of Civil Appeals found its procedural rules to be analogous to the federal rules. But again, that court's rationale for

We are faced with a similar situation here, where the record below was not adequate for reviewing courts to determine whether there was sufficient evidence to support the criminal-contempt conviction.[6] The proceedings where the alleged contumacious conduct occurred concluded years ago and there is no allegation that Murphy refused to comply with a lawful order of the court.[7] We are mindful that " 'the limits of the power to punish

---

determining that remand was not appropriate did not rest on that state's procedural rules. At the urging of both parties in *Howard*, the Alabama court concluded that the purpose of the contempt conviction, "maintaining order and decorum in the courtroom," had already been served. *Howard*, 47 So 3d at 1282. That case also involved the allegedly contumacious conduct of an attorney considered by the trial judge to be "overly argumentative." *Id*. at 1281. Both parties supported reversal of the conviction. *Id*. at 1282.

[6] The dissent questions why we do not address caselaw from other states that would support remand. But the dissent does not cite any cases that persuade us that a different outcome should be reached here. In *Swain v State*, 226 So 3d 250, 251-252 (Fla App, 2017), the Florida District Court of Appeal did find that remand for a new hearing was the appropriate remedy after the trial court failed to cite the facts necessary to support a criminal-contempt conviction. But the Florida appellate court had the benefit of a transcript detailing the appellant's alleged contumacious conduct and did not engage in any discussion of the purpose of contempt. The dissent also points to *In re McDaniel*, 54 Kan App 2d 197; 399 P3d 222 (2017), but that case is also consistent with our reasoning. The *McDaniel* court found that the alleged contempt was not direct, so summary proceedings were improper in the first instance. *Id*. at 213. As discussed, we agree that when summary proceedings were not appropriate, a court may remand for nonsummary proceedings. The issue that Michigan courts have not previously addressed is whether remand is appropriate when summary proceedings *were* proper in the first instance.

[7] Contrary to Justice BERNSTEIN's assertion that none of the cases on which we rely involved "punishing the contemnors" for disrespectful behavior, *Shafer*, *Howard*, and *Schrimsher* involved just that. In *Shafer*, the trial court summarily punished an attorney for direct contempt after that attorney "proceeded to make numerous remarks concerning his resentment of the treatment he had received from the court and through his words, conduct and demeanor in open court exhibited disrespect for this court and its authority." *Shafer*, 216 Ga App at 725 (cleaned up). Similarly, in *Howard*, the allegedly contemptuous conduct was an attorney's "overly argumentative" nature. *Howard*, 47 So 3d at 1281. And *Schrimsher* involved an attorney's " 'accumulation of remarks . . . made *during the absence of the jury* . . . .' " *Schrimsher*, 493 F2d at 845 (emphasis added). Like Murphy,

for contempt are the least possible power adequate to the end proposed.' " *Kurz*, 35 Mich App at 656, quoting *Harris*, 382 US at 165. We do not declare a sweeping rule that remand for nonsummary proceedings is inappropriate in all matters when a finding of summary contempt is reversed or vacated for other reasons, such as when summary proceedings were not permissible. Here, however, we find the reasoning of our sister courts to be persuasive and aligned with our understanding of the nature of the summary contempt power.[8] Therefore, we conclude that remand to the district court for nonsummary proceedings is not appropriate in this instance because the original purpose of the contempt proceedings has been served. Any remand would therefore be nothing more than an exercise in futility. See *Camil*, 497 F2d at 230.

## III. CONCLUSION

"The contempt power is awesome and must be used with the utmost restraint." *In re Hague*, 412 Mich 532, 555; 315 NW2d 524 (1982). Accordingly, judges must both make sufficient findings to support a contempt adjudication and ensure that there is a sufficient record for review if the alleged conduct was not otherwise documented in court

---

the attorneys in *Shafer*, *Howard*, and *Schrimsher* were also punished through a fixed term of incarceration. *Shafer*, 216 Ga App at 725; *Howard*, 47 So 3d at 1281; *Schrimsher*, 493 F2d at 843. Thus, to the extent that there is a meaningful distinction between punishing a contemnor and restoring courtroom order and decorum, the authority upon which we rely addresses both scenarios.

[8] Considering the dearth of Michigan authority analyzing this nuanced issue, it is perplexing that Justice BERNSTEIN criticizes our reliance on out-of-state cases probing the same issue. Justice BERNSTEIN instead turns to run-of-the-mill bench-trial cases in which the prosecutor has produced evidence for the record that has nothing to do with summary contempt proceedings. We decline to follow suit given the unique nature of summary contempt proceedings in which, as Justice BERNSTEIN aptly puts it, "the court is the victim, witness, prosecutor, finder of fact, and sentencing tribunal all in one."

13

recordings or transcripts.[9]  Therefore, the circuit court properly vacated the contempt conviction on the basis of insufficient findings.  However, remanding to give the district court an opportunity to provide adequate evidence to support the conviction would be futile, because the proceedings where the alleged contumacious conduct occurred concluded years ago and the purpose of the contempt proceeding—to preserve order in the courtroom—has been fully served.  Accordingly, we vacate Parts II(B) and II(C) of the Court of Appeals' opinion as unnecessary and reverse Part III of that opinion affirming the circuit court's order remanding for nonsummary contempt proceedings.  Further, we reverse the circuit court's order to the extent that it remands this matter to the district court.

Kimberly A. Thomas
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

---

[9] Murphy alleges constitutional error on double-jeopardy grounds, but whether further contempt proceedings are constitutionally barred does not limit our ability to intervene when "the sound administration of justice requires[.]" *Kurz*, 35 Mich App at 659.  We decline to address the double-jeopardy question and instead offer relief on the basis of the limited scope of the contempt power and the need to constrain that authority.

# STATE OF MICHIGAN

## SUPREME COURT

*In re* CONTEMPT OF KATHY H. MURPHY.

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

No. 165666

KATHY H. MURPHY,

      Defendant-Appellant.

---

WELCH, J. (*concurring*).

Following a summary proceeding, the district court convicted defendant Kathy Murphy of criminal contempt and sentenced her to two days in jail. The circuit court reversed, holding that the evidence did not support the judgment, and remanded the matter to a different district court judge for nonsummary contempt proceedings. I agree with the majority's well-reasoned determination that a remand for nonsummary proceedings would be futile. I write separately, however, to explain why the Double Jeopardy Clauses of the state and federal Constitutions also bar remand.

## I. BACKGROUND

To understand the case's history, it is helpful to explain the difference between summary and nonsummary contempt proceedings. A court can use summary proceedings when a party commits direct contempt in that court's presence. MCL 600.1711(1).

Summary proceedings are meant to address and punish contempt immediately, and they do not involve traditional due-process protections. See 17 Am Jur 2d, Contempt, § 189, pp 648-650. Nonsummary proceedings, by contrast, involve the "traditional procedural safeguards" of an adversarial process. *In re Contempt of Scharg*, 207 Mich App 438, 440; 525 NW2d 479 (1994). A court must use nonsummary proceedings to sanction contempt that occurs outside that court's direct view, see MCL 600.1711(2), or when the judge " 'defers consideration of a contempt citation,' " *In re Contempt of Scharg*, 207 Mich App at 440, quoting *People v Kurz*, 35 Mich App 643, 659; 192 NW2d 594 (1971).

Defendant is an attorney, and the events that led to her criminal-contempt conviction occurred during her client's preliminary examination. After an allegedly contentious off-the-record exchange with defendant, the district court judge went on the record and told defendant that she would not allow "this disrespect coming from you." Asserting that defendant had behaved impermissibly, the district judge paused the preliminary examination and told defendant that "[y]ou can get your lawyer and we'll have a contempt proceeding right now." During the proceeding that followed, the district judge accused defendant of speaking "disrespectfully" and of having "consistently been rude to this Court on more than one occasion."

Despite defense counsel's request for specific allegations against defendant, the district court judge did not state for the record what exactly defendant said or did. Instead, the judge insisted that defendant "knows what she did" and relied on generalized accusations. The district judge insisted, for example, that defendant "was nasty and she was disrespectful and she was rude and she continues to be." The district court convicted

2

defendant of criminal contempt and sentenced her to serve two days in the county jail, which she did.

The circuit court reversed the district court's contempt order and vacated defendant's conviction. The circuit court reasoned that the district court's "factual findings were insufficient." Based upon the record before it, the circuit court determined that it was "impossible . . . to find that the district court had sufficient evidence to hold [defendant] in contempt." In other words, the circuit court held that "the evidence does not support [the district court's] findings." The circuit court therefore vacated defendant's conviction and remanded the matter to a different district judge for nonsummary criminal-contempt proceedings.

Defendant moved for reconsideration, arguing that remand would violate the Double Jeopardy Clauses of the federal and state Constitutions. See US Const, Am V; Const 1963, art 1, § 15. The circuit court rejected defendant's argument and denied the motion, holding that because the district court's "findings were insufficient, not the evidence," double-jeopardy protections did not prohibit remand for nonsummary proceedings.

The Court of Appeals affirmed the circuit court's judgment in a published opinion. *In re Contempt of Murphy*, 345 Mich App 500; 7 NW3d 72 (2023). The panel found that because the "record is bereft of both evidence in the transcript and description by the district court," the "record arguably exhibits *both* insufficient evidence *and* insufficient competent evidence." *Id*. at 507. The panel then held that summary criminal-contempt proceedings are *never* subject to the constitutional protections against double jeopardy. This appeal followed.

3

## II. STANDARD OF REVIEW

The Court reviews contempt orders for an abuse of discretion. See *In re Contempt of Steingold*, 244 Mich App 153, 157; 624 NW2d 504 (2000). The Court reviews de novo constitutional questions. *People v Nutt*, 469 Mich 565, 573; 677 NW2d 1 (2004).

## III. DISCUSSION

Our Constitution provides that "[n]o person shall be subject for the same offense to be twice put in jeopardy." Const 1963, art 1, § 15. The Fifth Amendment of the United States Constitution likewise provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" This Court generally applies the same analysis to the state and federal Double Jeopardy Clauses. See *People v Beck*, 510 Mich 1, 11 n 1; 987 NW2d 1 (2022); *Nutt*, 469 Mich at 590. The Court is not, however, "bound to interpret" the state prohibition consistently with the federal prohibition. *Beck*, 510 Mich at 11 n 1.

"The purpose of the double jeopardy prohibition is to limit the state to having generally only one attempt at obtaining a conviction." *People v Dawson*, 431 Mich 234, 250; 427 NW2d 886 (1988). Without the double-jeopardy prohibition, "the state could repeatedly prosecute persons for the same crime, transforming the trial process itself into a punishment and effectively punishing the accused without his having been adjudged guilty of an offense meriting punishment." *Id*. The double-jeopardy prohibition "represents a fundamental ideal in our constitutional heritage[.]" *Benton v Maryland*, 395 US 784, 794; 89 S Ct 2056; 23 L Ed 2d 707 (1969).

To determine whether the Double Jeopardy Clauses bar remand in this case, the Court must first determine whether jeopardy attached during the summary proceeding. See

4

*People v Hicks*, 447 Mich 819, 826-827; 528 NW2d 136 (1994) (opinion by GRIFFIN, J.). If jeopardy attached, the Court must then consider whether any of the exceptions to the rule against double jeopardy apply. See, e.g., *Tibbs v Florida*, 457 US 31, 42; 102 S Ct 2211; 72 L Ed 2d 652 (1982); *Burks v United States*, 437 US 1, 14; 98 S Ct 2141; 57 L Ed 2d 1 (1978). In this case, jeopardy attached, and the exceptions to the double-jeopardy prohibition do not apply. Accordingly, remand is barred.

A. JEOPARDY ATTACHES AT SUMMARY CONTEMPT PROCEEDINGS

"Jeopardy attaches 'once the defendant is put to trial before the trier of fact, whether [it] be a jury or a judge.' " *Hicks*, 447 Mich at 826 (opinion by GRIFFIN, J.), quoting *United States v Jorn*, 400 US 470, 479; 91 S Ct 547; 27 L Ed 2d 543 (1971) (alteration in *Hicks*). As the United States Supreme Court has explained, "a defendant is placed in jeopardy in a criminal proceeding once the defendant is put to trial before the trier of the facts, whether the trier be a jury or a judge." *Jorn*, 400 US at 479. That is because "the risk to which the term jeopardy refers" is the risk that a tribunal will " 'authorize criminal punishment.' " *Breed v Jones*, 421 US 519, 529; 95 S Ct 1779; 44 L Ed 2d 346 (1975), quoting *United States ex rel Marcus v Hess*, 317 US 537, 548; 63 S Ct 379; 87 L Ed 443 (1943).

When determining whether jeopardy attaches, therefore, what matters is not the " 'formalities of the criminal adjudicative process,' " but the "risk" of such proceedings. *Breed*, 421 US at 531, quoting *McKeiver v Pennsylvania*, 403 US 528, 551; 91 S Ct 1976; 29 L Ed 2d 647 (1971) (opinion of Blackmun, J.). It is undisputed that double-jeopardy protections apply to nonsummary criminal-contempt proceedings. See *United States v Dixon*, 509 US 688, 696; 113 S Ct 2849; 125 L Ed 2d 556 (1993). However, neither this

5

Court nor the United States Supreme Court has ever decided whether jeopardy attaches to summary proceedings. See *id*. at 697 n 1. I believe that it does.

In this case, jeopardy attached at the moment the district court initiated summary contempt proceedings because defendant faced the risk of criminal punishment. After all, the proceeding resulted in defendant spending two days in jail. Because defendant was put before the trier of fact and faced with the risk of criminal punishment, jeopardy necessarily attached. See *Breed*, 421 US at 531.

The Court of Appeals held that jeopardy does not attach to summary criminal-contempt proceedings because such proceedings do not involve the same level of cost, uncertainty, embarrassment, and general harassment of a criminal trial. The panel was certainly correct that avoiding cost, uncertainty, embarrassment, and harassment is *one* purpose behind the double-jeopardy protections. See *Blueford v Arkansas*, 566 US 599, 605; 132 S Ct 2044; 182 L Ed 2d 937 (2012). But the panel neglected to consider that the protections also exist (1) to mitigate the risk that innocent people are convicted after multiple trials, see *Dawson*, 431 Mich at 251; and, relatedly, (2) to prevent the prosecutor from "honing its trial strategies and perfecting its evidence through successive attempts at conviction," *Tibbs*, 457 US at 41 (citing cases).

In this case, multiple proceedings would increase the risk of defendant being convicted even if she is innocent. See *Dawson*, 431 Mich at 251. Multiple proceedings would similarly provide the district court, which was effectively the prosecutor in this contempt case, see 17 Am Jur 2d, Contempt, § 189, p 649, additional chances to "hon[e] its trial strategies and perfect[] its evidence through successive attempts at conviction," *Tibbs*, 457 US at 41.

6

Additionally, the Court of Appeals purported to "join [its] sister jurisdictions in holding that summary criminal-contempt proceedings are not subject to the constitutional protections against double jeopardy." *In re Contempt of Murphy*, 345 Mich App at 512-513. The problem with that statement is that the cases upon which the panel relied all concerned whether a *prosecutor* could pursue *substantive and separate criminal charges* for acts that a trial court had previously found contemptuous. See *United States v Rollerson*, 145 US App DC 338, 339; 449 F2d 1000 (1971) (criminal defendant held in contempt for throwing a pitcher at a prosecutor during a trial and then charged with assault on the same facts); *United States v Mirra*, 220 F Supp 361, 361-363 (SDNY, 1963) (criminal defendant held in contempt for throwing a chair at the prosecutor during trial and then charged with assault on the same facts); *Marino v State*, 165 So 3d 60, 61 (Fla App, 2015) (petitioner held in contempt for the unauthorized practice of law and then charged with unauthorized practice of law as a substantive offense on the same facts); *People v Totten*, 143 Ill App 3d 132, 132-133; 491 NE2d 924 (1986) (criminal defendant held in contempt for punching the prosecutor in the face and then charged with battery on the same facts); *Commonwealth v Warrick*, 344 Pa Super 611, 612-613; 497 A2d 259 (1985) (criminal defendant held in contempt for fleeing a courtroom and then charged with escape on the same facts); *State v Warren*, 186 NJ Super 35, 36; 451 A2d 197 (Law Div, 1982) (criminal defendant held in contempt for refusing to testify and then charged with hindering the prosecution of another on the same facts). None of the cases cited by the Court of Appeals addressed whether jeopardy for *criminal contempt* attached at a summary criminal-contempt proceeding.

These cases instead stand for the unremarkable proposition that a criminal-contempt proceeding does not bar a subsequent prosecution for a different substantive offense based

7

upon the same facts. As the New Jersey Supreme Court explained, it is settled law that "the double jeopardy clause does not *per se* bar multiple prosecutions for the same criminal act. It merely precludes successive prosecutions for the *same offense*." *Warren*, 186 NJ Super at 39-40 (emphasis added). See also *Nutt*, 469 Mich at 576.

## B. THE DOUBLE JEOPARDY CLAUSES BAR REMAND

Once jeopardy attaches, there are still situations in which a subsequent proceeding is permitted. First, a subsequent proceeding is permitted if the "same-elements test" is satisfied. See *id*. The same-elements test allows for a subsequent proceeding if the offense at issue during that proceeding requires different elements of proof than the offense at issue during the first proceeding. See *id*. In this case, the summary contempt proceeding that occurred and the nonsummary proceeding that the circuit court ordered involved allegations of the same offense: criminal contempt of court. Accordingly, the same-elements test did not permit a subsequent proceeding in this case. See *id*.

Second, the Double Jeopardy Clauses do not bar the prosecutor from " 'retrying a defendant whose conviction is set aside because of an error in the proceedings . . . .' " *Burks*, 437 US at 14, quoting *United States v Tateo*, 377 US 463, 465; 84 S Ct 1587; 12 L Ed 2d 448 (1964) (emphasis omitted). That is because " '[i]t would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.' " *Burks*, 437 US at 15, quoting *Tateo*, 377 US at 466. By contrast, the United States Supreme Court has explained that when a reviewing court reverses because the evidence is insufficient, "the only 'just' remedy available for that court is the direction of a judgment

8

of acquittal." *Burks*, 437 US at 18. Under *Burks*, therefore, "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient . . . ." *Id*. The *Burks* standard thus examines whether an appellate court reversed a judgment due to deficiencies in the evidence or in the trial.[1] *Id*. at 14-18.

The Court of Appeals in this case "err[ed] on the side of caution and proceed[ed] as if the reversal was based, at least in part, on insufficient evidence." *In re Contempt of Murphy*, 345 Mich App at 507. That holding is not on appeal. Even if it were on appeal, it is clearly correct. Put simply, there is *no evidence* in the record that defendant is guilty of criminal contempt. As the circuit court explained, "[b]ased on the record, it is impossible . . . to find that the district court had sufficient evidence to hold [defendant] in contempt." The district court indicated only that defendant had a generally disrespectful "disposition," was "rude," and had rude "facial expressions." None of those accusations, without more, is enough to warrant a court using its "awesome" power to put an attorney in jail for criminal contempt. *People v Matish*, 384 Mich 568, 572; 184 NW2d 915 (1971). The evidence was therefore insufficient to sustain a conviction.

The dissent disagrees, arguing that I "conflate[] the sufficiency of the record with the sufficiency of the evidence." *Post* at 13 n 6. Going further, the dissent asserts that "[t]o consider an insufficiently maintained record as equivalent to the absence of sufficient evidence is, at least in this case, a mischaracterization of these proceedings." *Post* at 13 n 6. The dissent's description is inaccurate: there is no dispute over the record among the

---

[1] The United States Supreme Court has held that retrial is not barred "when a judge disagrees with a jury's resolution of conflicting evidence and concludes that a guilty verdict is against the weight of the evidence." *Tibbs*, 457 US at 42, citing *Hudson v Louisiana*, 450 US 40, 44-45 n 5; 101 S Ct 970; 67 L Ed 2d 30 (1981).

reviewing courts. The circuit court, the Court of Appeals, the majority of this Court, my dissenting colleague, and I all agree on the nature of the proceedings: the district court asserted that defendant committed criminal contempt but left a record that "impede[d] appellate review." *Post* at 8 n 1.

The issue is not what happened as a matter of fact; the issue is whether, *as a matter of law*, defendant's conviction fails due to insufficient evidence. See *Burks*, 437 US at 18. In other words, the *legal* issue is whether an appellate court's reversal of a criminal-contempt conviction due to the lower court's failure to put sufficient evidence of criminal contempt on the record constitutes a reversal due to insufficient evidence. The Court of Appeals understood as much, determining that the "record arguably exhibits *both* insufficient evidence *and* insufficient competent evidence." *In re Contempt of Murphy*, 345 Mich App at 507. For that reason, the Court of Appeals "proceed[ed] as if the reversal was based, at least in part, on insufficient evidence." *Id*. This is therefore an instance of disagreement about a legal issue rather than an instance of one side perpetrating "a mischaracterization of" the proceedings.

The dissent's analysis is unpersuasive for another reason: it undervalues the fact that the trial court is not just the fact-finder in summary contempt proceedings; it is the de facto prosecutor. See 17 Am Jur 2d, Contempt, § 189, p 649. See also *post* at 6-7. Accordingly, the absence of a sufficient factual record is not merely a procedural error comparable to a trial court's failure to comply with MCR 2.517(A) following a bench trial. It is also a *prosecutorial failure* to present sufficient evidence. And when the prosecutor fails to present evidence sufficient to prove a defendant's guilt, the Double Jeopardy Clauses prohibit retrial. See *Burks*, 437 US at 15-18. The dissent states that remand would not allow

10

"the district court to engage in further fact-finding to supplement the evidence" but would instead allow "the facts already considered at the summary proceeding to be placed on the record at a nonsummary proceeding." *Post* at 13 n 6. But the district court, acting as prosecutor, had the opportunity to put those facts on the record and failed to do so. Accordingly, remand would give the district court the opportunity to "hon[e] its trial strategies and perfect[] its evidence through successive attempts at conviction"— something that the Double Jeopardy Clauses prohibit after a reversal for insufficient evidence. *Tibbs*, 457 US at 41 (citing cases). The dissent does not explain how remand would not give the district court a second bite at the proverbial apple.

The Double Jeopardy Clauses are "fundamental" to "our constitutional heritage." *Benton*, 395 US at 794. And there are no carveouts for criminal contempt. See US Const, Am V; Const 1963, art 1, § 15. When viewing the power of the Double Jeopardy Clauses alongside the principle that courts deal with criminal contempt by using the " 'least possible power adequate to the end proposed,' " *People v Kurz*, 35 Mich App 643, 656; 192 NW2d 594 (1971), quoting *Harris v United States*, 382 US 162, 165; 86 S Ct 352; 15 L Ed 2d 240 (1965), remand is not "merely" a procedural correction. It is a constitutional violation.

## IV. CONCLUSION

The district court convicted defendant of criminal contempt and placed her in jail for two days. As both a legal and a practical matter, defendant was placed "in jeopardy of life or limb." US Const, Am V. Jeopardy therefore attached. After jeopardy attached and the district court convicted defendant, the reviewing court determined that it was

11

"impossible . . . to find that the district court had sufficient evidence to hold [defendant] in contempt."  Because "the reviewing court . . . found the evidence legally insufficient," the Double Jeopardy Clauses "preclude[] a second" proceeding.  *Burks*, 437 US at 18.  As a result, the Court of Appeals erred by holding that jeopardy never attaches to summary criminal-contempt proceedings.

Elizabeth M. Welch

12

*In re* CONTEMPT OF KATHY H.
MURPHY.

_____

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

No. 165666

KATHY H. MURPHY,

      Defendant-Appellant.

_____

BERNSTEIN, J. (*dissenting*).

The question presented to us in this case is whether a remand for nonsummary proceedings is appropriate after a defendant's summary contempt conviction was vacated on appeal because the record lacked particularity as to the defendant's contumacious conduct. This Court holds that remanding for nonsummary proceedings in such a circumstance is "inappropriate." In reaching this conclusion, the majority opinion characterizes the error here as a procedural error. Yet rather than curing that procedural error by remanding for the appropriate procedures to take place, the majority concludes that a remand would "be futile and exceed the scope of the judiciary's inherent contempt powers." Neither of these assertions is supported by the facts or law of our state. Notably, the majority opinion does not root its holding that remand would be "inappropriate" in any Michigan authority. Instead, the majority relies on distinguishable out-of-state authorities

that conflict with Michigan jurisprudence. Aside from the differences in procedural requirements that exist between Michigan and the jurisdictions of the authorities cited by the majority, those authorities also involved situations not comparable to the one we consider here. I believe that the circuit court properly remanded this case for nonsummary proceedings. Accordingly, I dissent.

## I. FACTUAL BACKGROUND

The majority and I agree on the key facts of this case. Appellant, Kathy Murphy, is a criminal defense attorney. On the day that the alleged contumacious conduct occurred, Murphy was representing a client during a preliminary examination in district court. During a court recess, the presiding judge witnessed conduct on Murphy's part that the judge found to be disrespectful. Summary criminal-contempt proceedings immediately followed. According to the transcript of the summary contempt proceedings, the district court complained that several of Murphy's actions were disrespectful to the court. The court noted that Murphy rolled her eyes throughout the proceedings, took a disrespectful tone, and was using her cellphone during the contempt proceedings. The record also details a number of disruptions that occurred during the proceedings. However, the court explained that these incidents were not the basis of the criminal-contempt charge and that Murphy "knows what she did. She knows what she stands accused of." More specifically, the record provides:

> The Court has had an opportunity to consider what has occurred and there is no need for a hearing in this proceeding because there has been direct disrespect. It's been done in the presence of the Court and so the Court will make a record about the disrespect that has been shown by Ms. Murphy to this Court on more than one occasion.

2

The Court will make a record that Ms. Murphy on a prior occasion when this matter was up for a Pretrial told the Court at side bar that she was not going to provide discovery to the prosecutor that would make this case proceed or go in an efficient and timely manner and told this Court that I could put her in jail because she was not gonna do what I directed her to do which was to allow the prosecutor to make a copy of the transcripts that were—that the defense had incurred or obtained in a prior proceeding. After speaking with Ms. Murphy and ordering her that she would in fact make the transcripts available she did do that.

Today there was a disruption in the courtroom. The Court does not know who these individuals are. Just generally I believe that the decedent's family is on the left hand side of the courtroom and the defendant's family is on the right hand side of the courtroom but there was an individual that was asked to be removed from the courtroom and did not do so willingly. It disrupted the proceedings. I further learned that that individual may have been or is related to the witness that was testifying. The witness begin [sic] to breakdown.

The Court took a 5 minute recess and following the recess there were 10 to 15 individuals that were on the right hand side of the courtroom. They exited the courtroom. All together just left. Following that someone on the left hand side of the courtroom who has been identified as the deceased['s] mother had a break down. There were some communications about how this continue [sic] to happen. I don't know. Something is happening. The parties approached and there was—[t]hey informed me about what they believe to be happening and also told me that my Court officers had recommended or were suggesting that the courtroom be closed because of the disruptions that were occurring.

I decided at that point and time after listening to both the [prosecutor and defense co-counsel] and also giving Ms. Murphy an opportunity to talk that I was going to close the courtroom. *Ms. Murphy then disrespectfully said to the Court—told the Court what I had previously done as far as giving a break to the witness then disrespectfully said some other things that were inappropriate at the time and rude and she's consistently been rude to this Court on more than one occasion. So the Court has decided that you have and will be held in contempt of Court.* This is direct—[t]his is a direct contempt proceeding. You don't need a hearing and you will be held in the Wayne County Jail for three days. [Emphasis added.]

The court then entered a judgment of contempt against Murphy. Murphy filed a motion for reconsideration, which the court denied. The sentence was then amended to reflect that Murphy would serve a two-day sentence in Wayne County Jail. After she was released from Wayne County Jail, Murphy appealed the judgment of contempt in the circuit court.

After hearing oral argument on the matter, the circuit court issued an opinion and order vacating the district court's contempt judgment and Murphy's conviction. The circuit court explained that the district court had properly instituted summary proceedings because the alleged contumacious conduct occurred within the court's view. However, the circuit court found that the trial transcript did not state with specificity what the contumacious conduct was, and therefore, the circuit court could not determine whether the evidence was sufficient to hold Murphy in contempt. The circuit court made clear that the evidence itself existed—the record stated as much. But the circuit court determined that the record did not include *competent* evidence such that the circuit court could review the district court's findings with any particularity. Because proper appellate review could not be facilitated under these circumstances, the circuit court remanded the case for a nonsummary contempt proceeding under MCR 3.606 before a different district court judge.

Murphy moved for reconsideration, arguing that remanding for a nonsummary proceeding would violate her constitutional right against double jeopardy. The circuit court denied her motion in a written order. Pertinent to our consideration here, the circuit court explained that, because Murphy had not been acquitted of contempt, double-jeopardy protections were not triggered. In other words, the circuit court made clear that an incomplete record did not amount to an automatic acquittal. The circuit court merely

4

required more specificity as to the conduct in question to facilitate appellate review of whether that conduct could sustain a criminal-contempt conviction.

Murphy appealed as of right in the Court of Appeals, which affirmed the circuit court. The Court of Appeals acknowledged that the record was lacking, but it concluded that a remand for nonsummary proceedings was appropriate because Michigan law recognizes that when a contempt conviction from a summary proceeding is reversed on appeal, the proper remedy is a remand for a new, nonsummary proceeding. See *People v Kurz*, 35 Mich App 643, 656; 192 NW2d 594 (1971) ("We are also satisfied that the contempt charges should have been heard by a circuit judge other than the one who presided at the trial and who issued the order to show cause citing [the attorney-contemnor] for contempt."); *In re Scott*, 342 Mich 614; 71 NW2d 71 (1955); *In re Meizlish*, 72 Mich App 732; 250 NW2d 525 (1976).

Murphy then sought leave to appeal in this Court, and, in lieu of granting leave to appeal, we directed oral argument on the application. *In re Murphy*, 513 Mich 948, 949 (2023).

## II. STANDARD OF REVIEW

"The issuance of an order of contempt rests in the sound discretion of the trial court and is reviewed only for an abuse of discretion." *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009). Whether the findings in the record are sufficient to support the trial court's ruling of criminal contempt is a question of law. Questions of law are generally subject to de novo review. *In re Contempt of Dudzinski*, 257 Mich App 96, 99; 667 NW2d 68 (2003). Similarly, "[c]hallenges to the sufficiency of the evidence are reviewed de novo." *People v Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020).

5

### III.  THE CONTEMPT POWER

Courts possess both the inherent power and statutory authority to punish contempt. *In re Contempt of Dudzinski*, 257 Mich App at 108; MCL 600.1701 to MCL 600.1745. "Contempt committed in the immediate view and presence of the court may be punished summarily by fine, imprisonment, or both." *In re Contempt of Dudzinski*, 257 Mich App at 108, citing MCL 600.1711(1).  In such circumstances, the court is the victim, witness, prosecutor, finder of fact, and sentencing tribunal all in one.  17 Am Jur 2d, Contempt, § 189, p 649.  Thus, "[t]he contempt power is awesome and must be used with the utmost restraint." *In re Hague*, 412 Mich 532, 555; 315 NW2d 524 (1982).

The contempt power is employed to maintain order during court proceedings and to ensure respect for the judicial process. *In re Contempt of Dudzinski*, 257 Mich App at 108-109.  Importantly, this case involves criminal contempt rather than civil contempt.  Relevant to our consideration here, criminal contempt does not attempt to "force the contemnor to comply with an order, but is simply punishing the contemnor for past misconduct that was an affront to the court's dignity." *Porter v Porter*, 285 Mich App 450, 455; 776 NW2d 377 (2009).  In other words, the purpose of criminal contempt is generally punitive.  See *id*. at 455, 458 n 3.  Moreover, a fixed term of incarceration for criminal contempt—as Murphy received in this case—is not intended to coerce the contemnor to act or refrain from acting in a certain way; instead, it serves " 'solely as punishment for [a] completed act of disobedience' " or a show of disrespect for the authority of the court. *In re Contempt of Dougherty*, 429 Mich 81, 93-94; 413 NW2d 392 (1987), quoting *Gompers v Bucks Stove & Range Co*, 221 US 418, 443; 31 S Ct 492; 55 L Ed 797 (1911).

6

Contempt actions, whether summary or nonsummary, are tried before a court without a jury. Our court rules instruct that, "[i]n actions tried on the facts without a jury or with an advisory jury, the court shall find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment." MCR 2.517(A)(1). "Brief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without over elaboration of detail or particularization of facts." MCR 2.517(A)(2). "The court may state the findings and conclusions on the record or include them in a written opinion." MCR 2.517(A)(3).

## IV. ANALYSIS

The majority's decision proceeds in two interrelated stages. First, the majority characterizes the deficiency of the record on appeal as a procedural error. The majority does little to explain why this procedural error cannot or should not be cured by remanding for nonsummary proceedings, and it turns to distinguishable out-of-state authorities to justify its conclusion that the record should not be made whole. Second, to buttress its conclusion that the procedural error cannot be cured, the majority again turns to out-of-state authority to conclude that the summary contempt power is simply too awesome for this Court to tolerate a remand to cure a procedural error. However, these out-of-state authorities do not support the majority's conclusions because they (1) rely upon specifically codified rules and accompanying remedies that are not applicable here and (2) hold that remanding for nonsummary proceedings would be futile on the basis of distinguishable uses of the contempt power. The majority does little more than state that it finds these out-of-state authorities persuasive and adopts them here. In adopting these authorities' rationales as its own, the majority disregards that Michigan has no similar

7

recordkeeping remedy and that a court's inherent contempt power includes the power to punish as well as the coercive authority necessary to maintain orderly proceedings. I will address each of these erroneous arguments in turn.

To begin, the majority questions whether the circuit court properly remanded this case for nonsummary proceedings after it determined that the record was insufficient for appellate review. The majority first holds that a remand for nonsummary proceedings would be inappropriate in this case because the district court failed to maintain a proper record.[1] The majority turns to out-of-state authorities to instruct Michigan courts how to adjudicate cases in which, "similarly to this case, the record of the summary contempt proceeding was insufficient to support the contempt conviction or to allow appellate review."

The majority finds persuasive decisions coming out of the United States Court of Appeals for the Fifth Circuit. See, e.g., *United States v Camil*, 497 F2d 225 (CA 5, 1974). But the majority mischaracterizes these decisions and neglects to consider that they are not compatible with Michigan authority. Importantly, these cases apply the Federal Rules of

---

[1] That the record lacks detail is not entirely surprising in this circumstance. All relevant evidence was observed and considered by the district court. The court, as the fact-finder, then held Murphy in contempt. The district court here served both as the direct witness to and the victim of the allegedly contumacious conduct. Thus, the district court was able to consider and rely upon this evidence even though it was not admitted on the record. Nonetheless, I agree with the majority's sentiment that such improper recordkeeping, which necessarily impedes appellate review, is troubling. I simply disagree with the majority's determination that there is no cure for such an error.

Criminal Procedure, relying primarily on former Rule 42(a).[2]  In relevant part, that rule provided that criminal contempt " 'may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court.  The order of contempt shall recite the facts and shall be signed by the judge and entered of record.' "  *Camil*, 497 F2d at 226 n 2, quoting FR Crim P 42(a).

In *Camil*, 497 F2d at 226, several appellants were charged with criminal contempt and summarily punished pursuant to Rule 42(a).  The basis of the contempt proceedings was an "unruly outbreak in the courtroom," for which the trial court imposed a suspended sentence of unsupervised probation.  *Id*.  On appeal, the Fifth Circuit panel noted that the transcript of the pleadings was factually deficient and failed to comply with the requirements imposed by Rule 42(a).  *Camil*, 497 F2d at 228.  Consequently, the Fifth Circuit held that it was prohibited from considering the appeal because circuit-specific authority required strict compliance with Rule 42(a).  *Camil*, 497 F2d at 228-229, citing *Widger v United States*, 244 F2d 103, 106-107 (CA 5, 1957).

The majority's reliance on *United States v Schrimsher*, 493 F2d 842 (CA 5, 1974), fares no better.  There, the Fifth Circuit considered an order of contempt that had not detailed the factual predicate for the contempt conviction.  *Id*. at 845.  *Schrimsher* explained that "[c]onclusory language and general citations to the record are insufficient.  The order

---

[2] Rule 42 was amended on April 29, 2002, effective December 1, 2002.  The substance of former Rule 42(a) now appears at FR Crim P 42(b).

entered by the judge in the instant case does not recite the facts with particularity, and *therefore does not satisfy Rule 42(a)*." *Id.* (emphasis added).[3]

The majority adopts this reasoning here. But, in so doing, the majority fails to address the fact that the Fifth Circuit's holdings were compelled by Rule 42(a) and the body of developed caselaw that interprets that rule. Michigan has no similar rule that could require such strict compliance. Accordingly, the circuit court was under no obligation to accept the trial record as presented. Nothing in our jurisprudence prevented the circuit court—or would prevent this Court—from remanding for nonsummary proceedings, and the majority's proffered out-of-state authority is not applicable.[4] Rather, Michigan

---

[3] The majority makes the same analytical misstep when it turns to the reasoning coming out of Alabama. In *Howard v Wood*, 47 So 3d 1280 (Ala Civ App, 2010), the Alabama Court of Civil Appeals adopted the reasoning of the Fifth Circuit because Alabama had a court rule that was analogous to Rule 42(a). See *id.* at 1282 (adopting *Schrimsher* because "*Schrimsher* construed Rule 42(a), . . . which, at the time *Schrimsher* was decided, contained provisions similar to the provisions of Rule 70A(b)(1), Ala. R. Civ. P.").

Although the Georgia Court of Appeals clearly stated in *In re Shafer*, 216 Ga App 725, 726-727; 455 SE2d 421 (1995), that a remand is inappropriate where the lower court record was inadequate, and although it did not rely on either Rule 42(a) or an analogue thereof, I question the majority's reliance on it all the same. For one, the decision not to remand in *Shafer* seems not to have been based on any authority beyond the court's own sense of what would be appropriate, see *id.* at 727, and three judges dissented from the decision not to remand in that case because, in their view, Georgia caselaw established that a remand for the trial court to make an adequate record was the appropriate remedy, *id.* at 728 (Andrews, J., concurring in part and dissenting in part). But more than that, the majority simply fails to explain why it is appropriate to reach outside of Michigan caselaw to justify the standard it now adopts, when Michigan caselaw would otherwise allow for a remand under the circumstances. In other words, although reliance on *Shafer* is not as flawed as reliance on Fifth Circuit caselaw, the majority similarly fails to explain why we should supplant our own caselaw in the first place, especially given that other out-of-court caselaw reaches the opposite conclusion. See note 4 of this opinion.

[4] To the extent that the majority considers out-of-state caselaw persuasive, I question why it does not find persuasive out-of-state caselaw that comes to the opposite conclusion. For

10

caselaw, only cursorily cited by the majority, supports a remand for additional proceedings in this case.[5]

In cases where the court acts as the fact-finder, and the facts found are insufficient to facilitate appellate review, this Court has remedied the error by remanding for necessary fact-finding. For example, in *People v Jackson*, 390 Mich 621, 623; 212 NW2d 918 (1973),

---

example, in some states that have explicit written-findings requirements, courts have held that the appropriate remedy for insufficient findings on the record is to reverse and remand for proceedings that conform with the requirement. See, e.g., *Swain v State*, 226 So 3d 250, 251-252 (Fla App, 2017) (holding that because a trial court "erred by not providing a recital of the facts supporting the adjudication of guilt" under the state's relevant court rules, the proper remedy "is a new hearing at which the rule will be followed"). See also *In re McDaniel*, 54 Kan App 2d 197, 214-216; 399 P3d 222 (2017) (reversing the contemnor's criminal-contempt conviction and remanding to the lower court because the lower court did not comply with a state-specific statute). As it relates to *Swain*, the majority explains that the court there had "the benefit of a transcript detailing the [contemnor's] alleged contumacious conduct" while also conceding that "the trial court failed to cite the facts necessary to support a criminal-contempt conviction." To the extent that the majority believes that a "transcript detailing the . . . alleged contumacious conduct" is useful, I fail to understand why the majority is preventing such a transcript from being made here. Further, the majority fails to address my specific reliance on *Swain*—that the failure to comply with a court rule that resulted in the appellate court's inability to review the contempt conviction could be remedied through a remand. The majority's apparent agreement with *McDaniel* raises more questions than it answers. I cannot conceive of a reason why the majority would allow a remand for further proceedings when the summary contempt power was invalidly used in the first instance but refuse a remand where there is no question that the situation was amenable to summary contempt proceedings, but the incomplete record hinders appellate review.

[5] The majority explains that an analogous rule is not necessary to justify its reliance on these out-of-state authorities because the contempt power is an inherent power of the Court, and, as such, we may reform its use and curtail its reach as we see fit. I disagree. To the extent that this Court seeks to break new ground regarding the contempt power, this Court ought to root its decision in the legal reasoning of our own jurisprudence rather than whims about what the law should be and the considerations of other jurisdictions with differing laws.

11

the trial court sat as the fact-finder in the defendant's trial for second-degree murder. The defendant was convicted, but this Court held that the trial court failed to sufficiently articulate the reasons for its decision in findings of fact on the record. *Id*. at 627-628. Specifically, this Court concluded that the record revealed "sufficient doubt whether the judge correctly applied the law to the facts of this case," and consequently, this Court remanded for "additional fact finding on the record already made[.]" *Id*. at 628. See also *id*. at 627 ("[I]n criminal cases as well as civil cases a judge who sits without a jury is obliged to articulate the reasons for his decision in findings of fact[,] . . . [which] serve a function paralleling the judge's charge in a jury case, that of revealing the law applied by the fact finder."). *Jackson* recognized that such a remand was necessary to facilitate appellate review. See *id*. at 628. Since *Jackson* was decided, the Court of Appeals has followed our lead. See *People v Armstrong*, 175 Mich App 181, 184; 437 NW2d 343 (1989) (interpreting MCR 2.517(A) and holding that "[g]enerally, where the factual findings are insufficient, the appropriate remedy is to remand the cause for additional fact-finding"), citing *Jackson*, 390 Mich at 628. See also *People v Legg*, 197 Mich App 131, 134-135 & n 1; 494 NW2d 797 (1992) (characterizing *Jackson* as "decisional law" that addresses "issues such as the sufficiency of fact findings and the appropriate remedy when findings are insufficient" and explaining that "[a] court's failure to find the facts does not require remand where it is manifest that the court was aware of the factual issue, that it resolved the issue, and that further explication would not facilitate appellate review"), citing *Jackson*, 390 Mich at 627 n 3.[6]

---

[6] These cases also illuminate why Justice WELCH'S argument must fail. Justice WELCH explains that, "[p]ut simply, there is *no evidence* in the record that defendant is guilty of

criminal contempt." Said differently, she concludes that "[t]he evidence was therefore insufficient to sustain a conviction." Justice WELCH conflates the sufficiency of the record with the sufficiency of the evidence. As the circuit court observed, the record made clear that the evidence existed. The evidence was simply not described with a sufficient level of particularity on the record to allow for appellate review. To consider an insufficiently maintained record as equivalent to the absence of sufficient evidence is, at least in this case, a mischaracterization of these proceedings. The record demonstrates, and each lower court below us has discerned, that there is some evidence that was the basis for Murphy's criminal-contempt conviction. The ultimate question is what this Court ought to do when the record does not describe the underlying conduct with sufficient specificity so as to facilitate appellate review. There is no authority in our law for the proposition that a procedural error that is not the equivalent of an actual acquittal bars retrial. In advocating otherwise, Justice WELCH would create a "structural-error plus" category, allowing for an acquittal on the basis of a mere procedural error that could be cured by providing the appropriate procedure. Much like the majority, Justice WELCH does little to explain why this procedural error should not be cured on remand.

In response, Justice WELCH cites the Court of Appeals' assertion that the "record arguably exhibits *both* insufficient evidence *and* insufficient competent evidence." *In re Contempt of Murphy*, 345 Mich App at 507. Justice WELCH places too much weight on this statement. Regardless of how the Court of Appeals phrased the issue, we do not yet know whether sufficient evidence exists to sustain the conviction. And in any event, the Court of Appeals prefaced this alternate analysis with the word "arguably"; it was hardly dispositive analysis. Instead, reliance on this statement underscores my very point—that this Court cannot say with any level of certainty, without curing the record on remand, whether the evidence here was insufficient to sustain Murphy's criminal-contempt conviction. The Court of Appeals made the point that it could not weigh the sufficiency of the evidence because of the insufficiency of the record. This is why the Court of Appeals indicated that the record might exhibit insufficient evidence. For similar reasons, this circumstance is entirely unlike a prosecutor failing to present sufficient evidence, because in this case, the evidence existed and was considered; it just was not clearly recorded in the record.

Justice WELCH is correct that we agree that the district court's incomplete record " 'impede[d] appellate review.' " But I find puzzling her statement that "[t]he issue is not what happened as a matter of fact; the issue is whether, *as a matter of law*, defendant's conviction fails due to insufficient evidence." We simply do not have a complete recitation of the facts at this juncture to determine, as a matter of law, whether defendant's conviction fails due to insufficient evidence. I would remand not for the district court to engage in further fact-finding to supplement the evidence, but for the facts already considered at the summary proceeding to be placed on the record at a nonsummary proceeding. Without a

13

Notwithstanding the adoption of out-of-state authority that relies on the Federal Rules of Criminal Procedure in lieu of our own binding caselaw, the majority concludes that a remand for nonsummary proceedings would be inappropriate here because it would be futile to correct a mere procedural error. Although I agree with the majority that the error here is procedural in nature, I disagree that remanding for nonsummary proceedings would be futile. In order to conclude that a remand would be futile, the majority explains that the policy purposes underlying the contempt power would not be achieved on remand largely because Murphy has already served her sentence and the proceedings have ended. Accordingly, the majority would find that a remand here would improperly expand the contempt power.[7]

In support of this conclusion, the majority again relies on the same distinguishable out-of-state authorities. For instance, the *Camil* court, already skeptical of a remand for

---

sufficient record, it is impossible to ascertain whether defendant's conviction is supported by sufficient evidence and address the question as a "matter of law." In short, we do not currently have a pure "disagreement about a legal issue" because the facts that would allow this Court to consider that legal issue are not properly recorded.

[7] The majority dismisses my reliance on Michigan caselaw because that caselaw does not squarely involve the circumstance we consider here. However, our caselaw very clearly demonstrates that this Court has instituted a procedure for allowing a record to be cured on remand. Simply put, the majority does not explain why we should depart from our "run-of-the-mill" practice. The majority refers to the fact that I too acknowledge that, when the contempt power is employed, "the court is the victim, witness, prosecutor, finder of fact, and sentencing tribunal all in one." This appears to be a controlling point for the majority, for reasons it does not adequately explain. While I agree that such a circumstance is unique and merits judicial scrutiny, the majority fails to put forward any compelling reason why the usual remedy for a procedural error should be considered improper in such a circumstance. It would seem natural that a procedural error should be cured by ensuring that the proper procedure takes place.

14

additional proceedings because the lower court had not strictly complied with Rule 42(a),

explained that the primary purpose of the contempt proceedings below was "to preserve

order, to stake out limits between proper and improper conduct on the part of defendants

and spectators in the trial about to be commenced[.]" *Camil*, 497 F2d at 229-230. This

purpose, the *Camil* court explained, was "fully demonstrated by the nature of the

punishment imposed for contempt: Suspended sentences with unsupervised probation

expiring at the end of the trial. That purpose has been served." *Id*. at 230. Thus, the *Camil*

court found that a remand would be futile in such circumstances. The same reasoning

applied in *Schrimsher*. There, the Fifth Circuit noted that the sentence itself reflected that

the judge was "primarily concerned with the preservation of order in the courtroom during

the trial in which [the contemnor] was participating. Since that trial is long since

concluded, we think a proper disposition of this case is to reverse the order of contempt

and to dismiss the proceedings against" the contemnor. *Schrimsher*, 493 F2d at 845.[8]

---

[8] The majority concludes that these cases also employed the contempt power in order to punish disrespectful behavior. In response to my assertion that the contempt power was employed here to punish Murphy for disrespect rather than to maintain order or decorum in the courtroom, the majority turns to *Howard* and *Shafer* to explain that, in those cases, the lower courts had employed the contempt power *both* to maintain order and to punish the contemnor for disrespect. Assuming the majority's characterization of these cases is accurate, I fail to understand how such logic aids the majority where the district court here indicated that the basis of the contempt charge was Murphy's past disrespect rather than an attempt to maintain order. Reliance upon the contemnor's two-hour jail sentence in *Schrimsher*, which is better characterized as coercive rather than punitive, is similarly unavailing. While *Schrimsher* referred to an argument between the judge and the contemnor, the opinion expressly states that "[f]rom the sentence imposed by the judge in this case, it is clear that he was primarily concerned with the *preservation of order* in the courtroom during the trial in which [the contemnor] was participating." *Schrimsher*, 493 F2d at 845 (emphasis added). The *Howard* court similarly observed that "as in *Schrimsher*, [the trial judge] found [the contemnor] in contempt because he was concerned with maintaining order and decorum in the courtroom." *Howard*, 47 So 3d at 1282. At any rate,

15

The logic of these decisions is not difficult to follow. When a court exercises its contempt power to maintain order during the proceedings—and the imposed punishment serves that purpose—a remand to remedy a procedural error serves no purpose after the proceedings have concluded because the contempt power has already been used to achieve its objective. Importantly, that was not the case here; the district court never indicated that it used its contempt power to maintain order during the trial. While maintaining order in court is one purpose of the contempt power, it is not the only purpose. Instead, criminal contempt seeks to "punish the contemnor for past conduct that affronts the dignity of the court." *Porter*, 285 Mich App at 455. While the record did not describe Murphy's contumacious conduct with particularity, the record was clear that the district court intended to punish Murphy for affronting the dignity of the court. Indeed, the record reveals that the district court continuously referred to Murphy's attitude as "disrespectful," "inappropriate," "rude," "contentious," and "nasty." This was a case in which the district court sought to punish Murphy for a completed act of alleged criminal contempt, not to coerce her to obey the court or desist from contumacious behavior. See *Dougherty*, 429 Mich at 93-94. A remand here would not be an expansion of the contempt power; it would simply allow the contempt power to operate properly while facilitating appellate review. The out-of-state cases on which the majority relies simply do not apply, as the contempt power was used in those cases to compel order during the proceedings instead of punishing the contemnors. Here, the district court used the criminal-contempt power to punish

the majority does not answer my point that, where punishing the contemnor is the sole goal of a contempt order, it is of no consequence to the purpose of the contempt order that the proceedings have concluded.

16

Murphy for her conduct. Stating that a remand for nonsummary proceedings would be futile in this case is akin to saying that a remand following a criminal conviction is necessarily futile.[9]

## V. CONCLUSION

To reach its holding, the majority relies on caselaw that is distinguishable and incompatible with Michigan law. Finding the Fifth Circuit's reasoning attractive, the majority declines to address the fact that Michigan has no similar authority to Rule 42(a). On the contrary, our Michigan-specific caselaw supports a remand in the circumstances of this case, where the record provides an insufficient picture of the facts to facilitate appellate review. The majority explains that its holding is an appropriate restraint on the awesome contempt power, but in so holding, the majority fails to acknowledge that the criminal-contempt power allows for punishment of disrespectful behavior—a purpose not considered by the authority on which the majority relies.

Accordingly, I consider the majority's decision simply to vacate Murphy's criminal-contempt conviction to be both unsupported and premature. In the end, the majority cannot say with any more certainty than I can that the conviction was unsupported. I would have affirmed the lower courts' decisions to remand this case for nonsummary proceedings, which would have allowed the district court to place the relevant evidence on the written record and facilitated further appellate review, if necessary. To do otherwise is to supplant

---

[9] I also find it internally contradictory that the majority opinion deems a remand for nonsummary proceedings both futile and an improper extension of the contempt power. If a remand would indeed be futile—that is, incapable of producing a meaningful result—how could it also expand the contempt power to a new and improper scope?

our own caselaw with inapplicable federal authority for no apparent reason, and therefore,

I dissent.

Richard H. Bernstein
Brian K. Zahra

HOOD, J., did not participate in the disposition of this case because the Court considered it before he assumed office and because he presided over this case in the circuit court.